Filed 9/28/20  In re S.B. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.B., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> VERONICA B., <br><br> Defendant and Appellant. | F080613 <br><br> (Super. Ct. No. 18CEJ300335-1) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Fresno County.  Brian M. Arax, Judge.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Kevin A. Stimmel, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Franson, J. and Snauffer, J.

At a Welfare and Institutions Code section 366.26[1] hearing January 21, 2020, the juvenile court found now four-year-old S.B. likely to be adopted and terminated mother Veronica B.'s parental rights to the child. Mother challenges the orders from the jurisdiction and disposition hearing, claiming her right to challenge those orders is preserved. She also contends the juvenile court erred when it denied her section 388 petition and failed to apply the beneficial parent-child relationship exception to adoption. We affirm.

## STATEMENT OF THE FACTS AND CASE

Nearly three-year-old S.B. was placed in temporary foster care by the Fresno County Department of Social Services (department) on November 26, 2018, when his mother, under the influence of methamphetamine, was hospitalized pursuant to section 5150. The whereabouts of S.B.'s alleged father, A.O., was unknown.[2]

Prior to being hospitalized, mother punched a man she accused of molesting S.B., after she left him at a friend's house for 10 minutes. All those present at the residence insisted S.B. had been out in the front yard with them and no one had taken him into the house or touched him. When police arrived at mother's home, the gas was on, but she was not cooking. Her roommates advised officers that mother was being evicted within days and that they were afraid of mother, whom they suspected of using drugs. The roommates reported mother had been awake for over 24 hours. S.B. was dirty and his clothing smelled, but he did not have an signs of sexual abuse.

Mother told the officers she punched the man because S.B. told her the man put his finger in his butt and "poop came out." Mother reported three new holes and defecation in S.B.'s underwear after the incident. Mother denied not providing adequate

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Alleged father is not a party to this appeal.

care for S.B. and denied turning the gas on in the home. According to mother, she stopped using methamphetamine two years prior, and now used only marijuana, but not in the home or around her children.

Confronted with a positive test for methamphetamine upon section 5150 admission, mother claimed the man who molested S.B. put methamphetamine in her beer. Mother said she had not sought drug treatment previously, but was willing to enter drug treatment if she needed to. She also reported untreated trauma with her family and having been raised in foster care. Mother had a criminal history of arrests and charges dating back to 2005.

Mother has two other children, both older than S.B. Both half siblings lived primarily with their father, but had court-ordered visits with mother on weekends.

*Detention*

On November 27, 2018, the department filed a section 300 petition alleging S.B. was at risk of harm due to mother's substance abuse and mental health issues. Mother was released from section 5150 hospitalization that same day.

At the detention hearing November 28, 2018, S.B. was detained and placed with a maternal aunt. The department was ordered to offer mother reunification services, including parenting classes, substance abuse assessment and treatment, random drug testing, domestic violence index assessment, and mental health evaluation and treatment. Mother reported no known Native American heritage. Jurisdiction and disposition were set for January 9, 2019.

*Jurisdiction/Disposition*

The report prepared in anticipation of jurisdiction and disposition recommended reunification services be bypassed for mother, pursuant to section 361.5, subdivision (b)(13). That section provides that reunification services need not be provided if a parent with a history of extensive and chronic drug or alcohol use has resisted prior court-ordered treatment within a three-year period immediately prior to the filing of the

3.

petition, or has failed or refused to comply with a court-ordered program on at least two occasions. (§ 361.5, subd. (b)(13).) The report chronicled mother's self-reported 14-year substance abuse issues, which began back in high school. She had had a June 2008 arrest for possession of a controlled substance, and ordered into drug treatment. In September of 2014, mother was arrested and charged with driving under the influence (DUI), both alcohol and drug related. And in January of 2015, she was convicted of a misdemeanor DUI involving alcohol and was required to complete an alcohol offender program.

At the scheduled contested jurisdiction/disposition hearing February 21, 2019, the hearing was continued, due to a recent substitution of counsel for mother. However, prior to adjourning the hearing, the juvenile court expressed concern with mother's decision making—she spoke rapidly, was visibly nervous and weepy, raised her voice, and was oppositional with her attorney in open court, expressing her desire to proceed without assistance of counsel. Mother insisted she was prepared for trial and had all of the facts and enough evidence to prevail at the hearing.

The juvenile court determined it was best to appoint a guardian ad litem for mother, noting her desire to go forward with the hearing without counsel, but not really wanting to represent herself. The juvenile court also noted mother's demeanor, which vacillated between moments of calm and moments when she blurted out and was on edge; and the juvenile court's belief that mother was not in a position to decide whether or not to proceed on that day. Mother agreed to the appointment of a guardian ad litem and the hearing was continued to March 13, 2019.

The jurisdiction/disposition hearing scheduled for March 13, 2019, was continued for contest to May 29, 2019. At the time, mother was receiving once a week visits with S.B.

In an addendum report, the department reported that S.B. was moved from maternal aunt's home on March 1, 2019, to a prospective adoptive foster home, after maternal aunt reported she was not able to provide a permanent home for S.B. The

4.

maternal aunt agreed to continue to monitor visits between mother and S.B., but warned the prospective adoptive caregiver that, in her opinion, mother was an aggressive and violent person.

The department reported that, when mother and the older half siblings arrived at a visit on March 17, 2019, mother picked up S.B. and told the older children to "run." Maternal aunt, who was to supervise the visit, ran after her and police were called. Mother was arrested for attempted kidnapping and violating court orders. The prospective adoptive caregiver reported S.B. had nightmares following this incident.

On May 20, 2019, S.B. told his prospective adoptive caregivers that he did not want to see mother. The prospective adoptive caregivers reported stress and anxiety on the part of S.B. on the days he was scheduled to see mother. S.B. began attachment-based therapy in May of 2019.

The department reported that mother had not participated in the services it had offered and recommended that she not be given reunification services, again noting her continued substance abuse and mental health issues.

At the May 29, 2019, jurisdiction/disposition hearing, mother was represented by counsel and guardian ad litem was present. At the hearing, mother testified that she loved S.B. and that, on the day S.B. was removed, he had told her he had been abused. Mother insisted that she did not use methamphetamine, only marijuana, and that she was capable of caring for S.B. She testified that she was employed and able to provide S.B. with food and shelter and that she had not been evicted from her home.

The juvenile court found the allegations in the petition true, finding that mother had a substance abuse problem, that she had been hospitalized under section 5150, that she exhibited behaviors consistent with mental health issues, and that she had been found to be under the influence while caring for S.B.

S.B. was declared a dependent of the juvenile court and foster care continued. Finding that visitation was detrimental to S.B., the juvenile court suspended visitation.

5.

Reunification services were denied, pursuant to section 361.5, subdivision (b)(13), due to mother's active or passive resistance to substance abuse treatment by relapsing during the previous three years.

A section 366.26 hearing was set for September 18, 2019. While mother had been present during the hearing, she had to be removed due to her "loud outbursts," and therefore was not advised in person of her writ rights. Mother's trial counsel and guardian ad litem, however, were both present, and mother was mailed, via first class mail, her writ rights.

## Writ Proceeding

On May 30, 2019, mother, in propria persona, filed a notice of intent to file a writ petition in the case, initiating case No. F079344 in this court. The case was dismissed July 18, 2019, when no writ petition seeking extraordinary relief was filed.

## Section 388 Petitions

On September 27, 2019, mother, in propria persona, filed a section 388 petition seeking reinstatement of visitation with S.B. and termination of jurisdiction on grounds that she had been enrolled in classes, was seeking employment, maintained contact with the social worker, and maintained sobriety. The petition alleged granting the section 388 petition would be in the best interests of S.B. so that he did not suffer believing he had been abandoned, when mother, in fact, wanted to be with him.

The section 388 petition was summarily denied on September 30, 2019.

Mother, in propria persona, filed a second section 388 petition on November 20, 2019, seeking information about S.B.'s whereabouts and seeking an evidentiary hearing on reinstatement of visits, the return of S.B. to mother's custody and care, and termination of jurisdiction. Mother alleged she had a home for S.B., she and S.B. were bonded, that he would have more love in her care, and that it was in his best interest to know that she did not abandon him, but had fed, sheltered and clothed him. In court, mother reported that she had gotten employment and had a home.

6.

The juvenile court set the section 388 petition for hearing.

*Report for Section 366.26 Hearing*

In the report prepared for the section 366.26 hearing, the department stated S.B. appeared to be comfortable in the prospective adoptive home, where he had been placed since the beginning of March of 2019. S.B. appeared to be developmentally on track and verbally able to express his wants and needs. The prospective adoptive caretakers were interested in adopting S.B.

*Section 388 and Section 366.26 Hearings*

On January 21, 2020, at the contested section 388 and section 366.26 hearing, mother, represented by counsel and with guardian ad litem present, testified she had been S.B.'s only caregiver until he was taken into protective custody, and that he had a relationship with her and his two older stepsiblings. Mother testified she had a bond with S.B., had taught him to talk, had potty-trained him, taught him to be independent, and had nursed him when he was sick. Mother testified that S.B. deserved to know that she loved him and she was doing everything she could to reunify with him, which she described as showing up in court and calling as often as possible to check on him. Mother thought it in S.B.'s best interest to have the opportunity to be back with his family. Mother testified that, if the juvenile court selected a permanent plan of legal guardianship, she would work to secure the bond that he had with his siblings.

Mother's counsel argued that mother had consistently attended hearings, missed only one or two interim hearings, had consistently wanted to reunify with S.B., and that the beneficial parent-child relationship exception should apply to prevent termination of parental rights.

The juvenile court denied mother's section 388 petition and terminated parental rights in favor of the permanent plan of adoption.

**DISCUSSION**

I.     FAILURE TO CHALLENGE JURISDICTIONAL AND DISPOSITIONAL ORDERS

Mother's first three arguments are that the juvenile court erred at the combined jurisdiction/disposition hearing setting a section 366.26 hearing by (1) taking jurisdiction, (2) denying reunification services, and (3) denying visitation at the combined jurisdiction/disposition hearing setting a section 366.26 hearing.  Although mother failed to seek timely review of these findings and therefore forfeited such challenges, she contends we should nonetheless consider her claim because the appointed guardian ad litem was not able to waive her right to review of the findings "through simple non-action."  We disagree, but in any event, find no error.

*Applicable Law and Analysis*

Whenever a juvenile court sets a section 366.26 hearing, it must advise all parties, including the parents, that those wishing to preserve any right to review on appeal the order setting the section 366.26 hearing must seek an extraordinary writ by filing a notice of intent to file a writ petition.  (Cal. Rules of Court, rule 5.590(b).)  Thus, at the setting of the section 366.26 hearing here, the juvenile court was required to provide notice orally if the party was present at the time the order was made, or, if a party was not present, by first-class mail to the last known address of the party.  (§ 366.26, subd. (*l*)(3)(A)(i)–(ii); see also Cal. Rules of Court, former rule 5.590(b).)

Generally, an order denying or terminating family reunification services and setting a section 366.26 hearing is not appealable and may only be reviewed by way of a writ petition.  (§ 366.26, subd. (*l*)(1), (2); *In re Hannah D.* (2017) 9 Cal.App.5th 662, 678; *In re A.H.* (2013) 218 Cal.App.4th 337, 346; *In re T.W.* (2011) 197 Cal.App.4th 723, 729.)  However, a parent may challenge the order on appeal if the juvenile court did not advise the parent of his or her right to seek writ review.  (*In re A.A.* (2016) 243 Cal.App.4th 1220, 1235 ["when a parent is not properly advised of his or her right to

8.

challenge the setting order by extraordinary writ, and consequently the parent does not timely file a writ petition, good cause exists to consider issues relating to the setting hearing"] (*A.A.*); *In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1110 [mother could challenge order terminating her reunification services where she did not receive a writ advisement]; *In re Harmony B.* (2005) 125 Cal.App.4th 831, 838–839 [because father was not given notice, he could raise issues concerning the setting hearing in appeal from orders following the section 366.26 hearing].)

Here, mother was at the jurisdiction/disposition hearing, but had to be removed due to her disruptive behavior, which occurred prior to the juvenile court setting the section 366.26 hearing and advising her of her writ rights. However, mother's counsel and guardian ad litem were present at the time, and the juvenile court ordered the clerk to mail writ rights to mother by first class mail within 24 hours to her last known address to inform her of her rights. The juvenile court clerk mailed mother her rights the following day to the address provided by mother.

Mother does not claim that she did not receive those rights. In fact, on May 30, 2019, mother, in propria persona, filed a notice of intent to file a writ petition in the case, initiating case No. F079344 in this court. The case was dismissed July 18, 2019, when no writ petition seeking extraordinary relief was filed. Instead, what mother is claiming on appeal is that the guardian ad litem appointed for her could not waive writ rights "through simply non-action," and this court should address the issues she raises as to the jurisdiction and disposition orders.

In support of her argument, mother relies on two cases—*A.A., supra,* 243 Cal.App.4th 1220 and *In re Cathina W.* (1998) 68 Cal.App.4th 716 (*Cathina W.*). We find neither case helpful to mother's argument.

In *Cathina W., supra,* the court found good cause for the mother's failure to file a notice of intent and writ petition. However, in *Cathina W.*, the mother, who was not present at the setting of the section 366.26 hearing, was not provided adequate notice.

9.

(*Cathina W., supra,* 68 Cal.App.4th at p. 722.)  Here, mother does not contend that she was not properly noticed.

And in *A.A.*, the mother, who had been appointed a guardian ad litem, was not present at the setting of the section 366.26 hearing, and was not properly provided notice, by mail, of her right to appeal or seek writ relief from juvenile court orders.  The court found good cause for mother's failure to file a notice of intent and a writ petition, noting that a guardian ad litem appointed for a parent in a juvenile dependency proceeding does not have the authority to forgo filing a petition for extraordinary writ—with the consequence of waiving the parent's right to challenge orders made at the setting hearing—without first consulting with the parent and the parent's attorney.  (*A.A., supra,* 243 Cal.App.4th at pp. 1234–1235.)  Here, however, not only did mother have notice, but she also filed a writ petition.

Having failed to seek timely writ review following the jurisdiction/disposition hearing, mother is now precluded from seeking appellate review of the juvenile court's jurisdictional and dispositional findings and orders.

Even addressing the issue on the merits, we find the findings and orders supported by substantial evidence, and find no abuse of discretion on the part of the juvenile court.

*Finding of Jurisdiction*

We review the juvenile court's jurisdictional findings using the substantial evidence standard of review, where we determine whether evidence of reasonable, credible and solid value supports the juvenile court's findings.  We do not reweigh the evidence, nor do we consider matters of credibility.  (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199–200.)  " '[W]e must uphold the [trial] court's [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings.' "  (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.)

10.

A child comes within the jurisdiction of the juvenile court under section 300, subdivision (b)(1), as relevant here, when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of ... the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness ... or substance abuse." "Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child [citation]. The court may consider past events in deciding whether a child presently needs the court's protection. [Citation.] A parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citation.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215–1216.)

Mother contends the juvenile court's orders sustaining dependency jurisdiction over S.B. should be reversed because the department did not meet its burden of showing S.B. had suffered substantial physical harm or was at substantial risk of suffering such harm as alleged in the section 300 petition. Specifically, mother argues she and S.B. had a parent-child relationship, that S.B.'s half siblings felt safe with her, and she had not previously had a child dependency case, and therefore the department did not produce substantial evidence that current mere substance usage or the fact that she was hospitalized under section 5150 presented a substantial risk of harm to S.B.

Mother correctly argues that, generally, substance abuse, without more, is an insufficient ground to assert jurisdiction in dependency proceedings under section 300. (*In re L.W.* (2019) 32 Cal.App.5th 840, 848–850.) Here, however, the juvenile court had before it evidence of mother's positive test for methamphetamine; observations that mother appeared to be under the influence on the day she was placed on a section 5150 hold; mother's long standing history of drug use dating back 14 years; mother disclosure

11.

of regular marijuana use while being the sole car provider for S.B.; and admission by mother that she needed an inpatient drug treatment program.

We also note that, in cases involving children of " 'tender years,' " "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 767; accord, *In re Natalie A.* (2015) 243 Cal.App.4th 178, 185–186; *In re Christopher R., supra,* 225 Cal.App.4th at p. 1216.) Here, S.B. was three years old when the juvenile court asserted jurisdiction. Based on the evidence that mother was abusing substances, the department was not required to make a particularized showing of risk.

*In re David M.* (2005) 134 Cal.App.4th 822 (*David M.*), relied on by mother, does not alter our conclusion. In *David M.*, the appellate court reversed a court's jurisdictional order holding that the agency had not borne its burden of showing the nexus between mother's mental health and substance abuse issues and father's mental health issues with any substantial risk of serious harm to their two-year-old and two-day-old children. (*Id.* at pp. 825, 832–833.) The allegations included "extensive" and "unresolved" substance abuse. (*Id.* at p. 825.) Though the appellate court acknowledged the mother "continue[d] to suffer from a substance abuse problem with marijuana in the limited respect shown on this appellate record," it did not find there was sufficient evidence on the record to show a specific, defined risk of harm to the children resulting from the substance abuse. (*Id.* at p. 830.) The court noted, "it [wa]s possible to identify many possible harms that *could* come to pass," but without more evidence than what was in the record before it, the harms were speculative. (*Ibid.*)

*David M.* is distinguishable because, as we have discussed, there was evidence on the record that mother's substance abuse put S.B. at a substantial risk of harm. Further, *David M.* was decided years before the judicially created " 'tender years' " presumption

was established, and to that extent, we do not find it persuasive. (See *Drake M., supra,* 211 Cal.App.4th at p. 767.)

We conclude the evidence was sufficient to support the juvenile court's finding that there was a substantial risk S.B. would suffer serious harm or illness as a result of mother's inability to provide regular care for him due to her substance abuse. Although mother also contends simply, without further argument, that substantial risk of harm to a child is not presumed if a parent has mental health issues, we need not address that claim, as a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction. (*Drake M., supra,* 211 Cal.App.4th at p. 762.)

### Denial of Reunification Services

The department and the juvenile court relied on section 361.5, subdivision (b)(13) to bypass reunification services for mother. She contends the order bypassing services is not supported by substantial evidence. We disagree. The record contains substantial evidence that petitioner meets the statutory criteria for bypassing services. (*In re Brian M.* (2000) 82 Cal.App.4th 1398, 1401.)

Section 361.5, subdivision (b) provides, "Reunification services need not be provided to a parent ... when the court finds, by clear and convincing evidence, any of the following: [¶] ... [¶] (13) That the parent ... of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment … on at least two prior occasions ...." (§ 361.5, subd. (b)(13); see also *D.B. v. Superior Court* (2009) 171 Cal.App.4th 197, 203.) Resistance to court-ordered treatment encompasses more than refusing to attend or participate in a program. "The parent also can passively resist by participating in treatment but nonetheless continuing to abuse drugs or alcohol, thus demonstrating an inability to use the skills and behaviors taught in the program to maintain a sober life."

13.

(*Karen S. v. Superior Court* (1999) 69 Cal.App.4th 1006, 1010.)  Proof of resistance to treatment "may come in the form of dropping out of programs, or in the form of resumption of regular drug use after a period of sobriety."  (*In re Brian M., supra,* 82 Cal.App.4th at p. 1402, fn. omitted; see *In re William B.* (2008) 163 Cal.App.4th 1220, 1230.)

Mother claims there was no evidence to support the finding of resistance during the statutorily required three-year-period (from November 26, 2015 through November 26, 2018) under section 361.5, subdivision (b)(13), again citing the fact that she was sharing custody of her two older children, who felt safe with her; that this was her first dependency case; and that she "merely" relapsed when she tested positive at the time of her section 5150 hold.

However, the evidence before the juvenile court was as follows:  When S.B. was taken into custody on November 26, 2018, mother tested positive for methamphetamine. According to mother, she had used controlled substances for 14 years, but had stopped using methamphetamine two years prior.  When S.B. was born in January of 2016, he tested positive for methamphetamine.  Mother's history included a 2008 arrest and charges for possession of a controlled substance for which she was ordered to complete a court-ordered drug treatment program; a September 14, 2014, arrest and charges for a DUI, alcohol/drug related; and a January 28, 2015, misdemeanor DUI conviction for alcohol, for which she was ordered to complete a first offender alcohol program.  Thus, mother had been court-ordered to complete drug treatment on at least two prior occasions and completed at least one court-ordered drug treatment program, and still continued to abuse drugs.

The court properly found mother had resisted treatment within the statutory requirements and that section 361.5, subdivision (b)(13) applied to mother.

14.

*Juvenile Court's Order to Suspend Visitation*

Mother also argues the juvenile court abused its discretion when it suspended her visits with S.B., citing the many visits she had with S.B. in which she claims she cared for him, nurtured him, and that he had a positive reaction to her. Mother requests this court to reverse this order, but we conclude that the court properly suspended mother's visits.

The juvenile court has the "power and responsibility" to regulate visitation between dependent children and their parents. (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1373; see also *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756–757.) When the juvenile court denies reunification services, as it did in this case under section 361.5, subdivision (b)(13), it "may continue to permit the parent to visit the child unless it finds that visitation would be detrimental to the child." (§ 361.5, subd. (f).)

We review a visitation order in a dependency proceeding for abuse of discretion. (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356.) "We will not disturb the order unless the trial court made an arbitrary, capricious, or patently absurd determination. [Citation.]" (*Ibid.*)

The juvenile court suspended mother's visitation rights at disposition. Finding them detrimental, after mother attempted to kidnap S.B. during a visit two months earlier. There had also been reports of mother yelling at S.B. during visits and various reports from S.B.'s care providers that S.B. was anxious and angry surrounding visits with mother, to the point that S.B. did not want to visit mother.

We conclude that no abuse of discretion appears in the court's suspension of mother's visitation.

II.    DENIAL OF SECTION 388 PETITION

Mother next contends that the juvenile court erred when it denied her November 20, 2019, petition requesting an evidentiary hearing on "issues such as the reinstatement of visitation for the mother and for the older siblings, the return of the minor to the

mother's care and custody, and termination of jurisdiction." We find no abuse of discretion.

*Background*

The section 388 petition filed by mother stated that she was now able to provide a home for S.B., she and S.B. were bonded, that S.B. would have a better opportunity to have more love in her care, that it was in S.B.'s best interests to know that he was not left behind, and that she had breastfed him, made him homemade food, and sheltered and clothed him.

At the hearing on the petition, which was also a contested section 366.26 hearing, mother testified she had raised S.B., had a bond with him, and he deserved to know that his mother loved him and was trying to get him back by attending all court sessions and calling every chance she got to check on him. In support of the petition, mother's counsel argued that mother had missed only one or two interim hearings and consistently wanted to be reunified with S.B.

The juvenile court denied the section 388 petition, without specifically addressing the reasons why, although it addressed, at length, its reasoning for terminating mother's parental rights, which included clear and convincing evidence of mother's failure to reunify with S.B., her continuing challenges of addiction and mental health concerns, and the fact that her visitation had to be suspended. The order after hearing states that the section 388 petition was denied, referencing the "transcript of hearing, 1-21-20."

*Applicable Law and Analysis*

Under section 388, a parent, interested person, or the dependent child may petition the court to change, modify, or set aside a previous order on the grounds of changed circumstances or new evidence. (§ 388, subd. (a).) The petitioner has the burden of showing, by a preponderance of the evidence, a change of circumstances or new evidence, and that the proposed modification is in the child's best interests. (*In re Michael D.* (1996) 51 Cal.App.4th 1074, 1083, 1086.)

16.

We review the grant or denial of a petition for modification under section 388 for an abuse of discretion. (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

In evaluating whether the petitioner has carried the burden in a section 388 petition, the juvenile court considers a number of factors, including: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531–532 (*Kimberly F.*).)

In addressing the first factor enunciated in *Kimberly F.*, the seriousness of the problem that led to the dependency proceedings, mother contends that the denial of the section 388 petition was prejudicially predicated on the erroneous findings and orders made at the jurisdictional and dispositional hearing. We have addressed the findings of the jurisdictional and dispositional hearings above, in part I., and found no error, so therefore find this factor does not weigh in mother's favor.

As for the second *Kimberly* factor, the strength of the relative bond between mother and S.B., mother recites the details of various visits with S.B. Even assuming the "relative bond" factor under *Kimberly F.* weighs in mother's favor, it is clear that the other two factors do not.

The third factor, which looks at the degree to which the problem may be or has been removed or ameliorated, and the degree to which it actually has been, does not weigh in mother's favor. Mother's substance abuse was the primary basis for jurisdiction in this case. Mother did not demonstrate that she made any progress in substance abuse treatment, either in her petition or testimony.

Parent and child share a fundamental interest in reuniting up to the point at which reunification efforts cease. (*In re R.H.* (2009) 170 Cal.App.4th 678, 697, disapproved on

17.

another point in *John v. Superior Court* (2016) 63 Cal.4th 91, 98–100.) However, by the point of a section 366.26 hearing to select and implement a child's permanent plan, the interests of the parent and the child have diverged. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 254.) After reunification efforts have terminated or, as they were here, bypassed, the court's focus shifts from family reunification toward promoting the child's needs for permanency and stability. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) At this point, there is a rebuttable presumption continued foster care is in the child's best interest, and such presumption applies with even greater strength when adoption is the permanent plan. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.)

Mother failed to show that termination of jurisdiction or return of S.B. to her custody and control would advance S.B.'s need for permanency and stability. (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.) It is not enough for mother to assert she and S.B. were bonded or that she had made other progress. Nor can mother simply argue these changes would be in S.B.'s best interests because he would benefit from being with mother and his half siblings or other family members. She must also rebut the presumption that continued placement with S.B.'s current caretakers was in S.B.'s best interest. (*In re Marilyn H., supra,* 5 Cal.4th at p. 310.)

Mother did not do so. By the time of the section 388 petition, S.B.'s foster parents had cared for him for almost a year. They have provided him a loving and supportive home addressing all his needs and he is bonded to them. His foster parents planned on adopting S.B. and providing him with a permanent home where his needs will be met consistently.

Mother, on the other hand, has suffered from alcohol abuse problems which she has not addressed. While she consistently visited S.B., those visits had to be suspended when she attempted to kidnap him and she had not had any visits since the end of May 2019. Here, mother failed to make a showing that granting her section 388 petition was in S.B.'s best interest. (See *In re Jasmon O.* (1994) 8 Cal.4th 398, 419 ["[W]hen a child

18.

has been placed in foster care because of parental neglect or incapacity, after an extended period of foster care, it is within the court's discretion to decide that a child's interest in stability has come to outweigh the natural parent's interest in the care, custody and companionship of the child."].)  The juvenile court did exactly what is mandated by law—it focused on S.B.'s permanence and stability.  By all accounts, S.B.'s foster parents—his future adoptive parents—can best serve S.B.'s interests at this time.

In light of the overwhelming evidence that no changed circumstances existed and that S.B.'s interests would not be best served by affording mother reunification services or terminating jurisdiction, we conclude the juvenile court did not abuse its discretion denying mother's section 388 petition.

## III. TERMINATION OF PARENTAL RIGHTS

Mother's last contention on appeal is that the juvenile court erred in terminating her parental rights because there was substantial evidence that she maintained regular visitation with S.B. and that he would benefit from continuing the parent-child relationship.  We find no merit to mother's claim.

*Background*

At the section 366.26 hearing, mother's counsel argued that mother's bond with S.B. was "enough" to implement a plan of guardianship rather than adoption.  The department argued no such exception to adoption had been proven, as mother had not visited S.B. for "a long time."

The juvenile court found S.B. to be adoptable and then addressed the parent-child relationship.  In doing so, the juvenile court found that there had not been regular and consistent visitation, and that the beneficial relationship between mother and S.B. not sufficient to prevent adoption.  The juvenile court then terminated mother's parental rights to S.B.

*Applicable Law and Analysis*

At the permanency planning hearing, the juvenile court determines a permanent plan for the child, and may order one of three alternative plans: adoption, guardianship, or long-term foster care. (§ 366.26, subd. (b); see *In re J.C., supra,* 226 Cal.App.4th at p. 528.) " 'If the dependent child is adoptable, there is strong preference for adoption over the alternative permanency plans.' " (*In re Anthony B.* (2015) 239 Cal.App.4th 389, 395.) Generally, if the court finds the child adoptable the court must terminate parental rights. "[T]o avoid termination of parental rights and adoption, a parent has the burden of proving, by a preponderance of the evidence, that one or more of the statutory exceptions to termination of parental rights set forth in section 366.26, ... apply." (*In re Anthony B., supra*, at p. 395.)

The benefit (or parental bond) exception exists where "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" (§ 366.26, subd. (c)(1)(B)) because "[t]he parents have maintained regular visitation and contact with the child *and* the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i), italics added.) In deciding whether the exception applies, " 'the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer.' [Citation.]" (*In re J.C., supra,* 226 Cal.App.4th at p. 528.) " 'If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' " (*Id.* at pp. 528–529.)

The factors the juvenile court considers in making this case-by-case assessment include: " 'The age of the child, the portion of the child's life spent in the parent's custody, the ... effect of interaction between the parent and the child, and the child's particular needs.' " (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1166.)

The benefit exception "does not permit a parent who has failed to reunify with an adoptable child to derail an adoption merely by showing the child would derive some benefit from continuing a relationship." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348.) "It is not enough to show that the parent and child have a friendly and loving relationship." (*In re J.C., supra,* 226 Cal.App.4th at p. 529.) " ' "[A] child needs at least one parent. Where a biological parent ... is incapable of functioning in that role, the child should be given every opportunity to bond with an individual who will assume the role of a parent." [Citation.]' [Citation.]" (*Ibid.*)

Appellate courts are divided over the appropriate standard of review to apply to an order determining the applicability of the beneficial parent-child relationship exception.[3] Some courts have applied the substantial evidence test (e.g., *In re G.B., supra,* 227 Cal.App.4th at p. 1166), while others have applied the abuse of discretion standard (e.g., *In re Jasmine D., supra,* 78 Cal.App.4th at p. 1351.) Still other courts have adopted a mixture of both standards, applying the " 'substantial evidence standard of review to the factual issue of the existence of a beneficial parental relationship, and the abuse of discretion standard to the determination of whether there is a compelling reason for finding that termination would be detrimental to the child.' " (*In re E.T.* (2018) 31 Cal.App.5th 68, 76.)

Our conclusion in this case would be the same under any of these standards because the practical differences between them are "not significant," as they all give deference to the juvenile court's judgment. (See *In re Jasmine D., supra,* 78 Cal.App.4th at p. 1351.) " '[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling.... Broad deference must be shown to the trial judge. The reviewing court should interfere only " 'if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no

---

[3]     This issue is currently before the Supreme Court in *In re Caden C.* (2019) 34 Cal.App.5th 87, review granted July 24, 2019 (S255839).

judge could reasonably have made the order that he [or she] did.' " ' " (*Ibid.*) Moreover, a substantial evidence challenge to the juvenile court's failure to find a beneficial parental relationship cannot succeed unless the undisputed facts establish the existence of those relationships, since such a challenge amounts to a contention that the "undisputed facts lead to only one conclusion." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1529, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.)

Mother suggests she cannot be judged on her lack of visitation, as required for the parent-child exception to apply, because visitation was improperly suspended. Again, however, we have found the suspension of visitation to be proper and mother cannot now claim otherwise.

In addition, mother has also failed to establish that the beneficial relationship exception to adoption would benefit S.B. and "promote[ ] the well-being of the child to such a degree *as to outweigh* the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575, italics added.)

Under the balancing test set forth in *Autumn H.*, we conclude the juvenile court acted within its discretion in terminating mother's parental rights. S.B. was removed from mother's custody when he was not yet three years old. The caregivers have been responsible for all of S.B.'s needs for almost a full year. While mother identifies ways she was appropriate and met S.B.'s needs during the supervised visits she had, there was no indication in the record that S.B. had trouble separating from mother at the end of visits. S.B. did not display any unusual medical or developmental issues that mother was particularly suited to address. It was reported that S.B.'s caregivers had a suitable home where S.B.'s needs would be met. And while mother may have had a loving relationship with S.B., she did not offer any testimony to suggest she could adequately provide for S.B.'s needs.

Here, the juvenile court determined that mother did not satisfy her burden of proof by a preponderance of the evidence. Based on the record before us we cannot find—as a matter of law—that the evidence compels a contrary finding. (See *In re I.W., supra,* 180 Cal.App.4th at p. 1528.) Further, there is substantial evidence to support the court's ruling, as well as the overriding statutory preference in favor of the child's adoption. (See *In re G.B., supra,* 227 Cal.App.4th at p. 1166 [" ' "it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement" ' "].) Thus, the juvenile court properly found the benefit exception did not apply and the court did not err in ordering the termination of mother's parental rights.

In addition to the beneficial parent-child relationship exception, mother invokes the exception to adoption under section 366.3, subdivision (a), that a permanent plan of legal guardianship provides all of the necessary and desired stability and permanence S.B. would require. However, our reasoning upholding the juvenile court's determination that the beneficial parent-child exception did not apply similarly supports the juvenile court's decision to terminate parental rights over mother's objection. As discussed, the juvenile court could reasonably conclude that the benefits of adoption outweighed the benefits of maintaining mother's parental rights.

## DISPOSITION

The orders of the juvenile court are affirmed.