Filed 3/4/21  T.T. v. Superior Court CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| T.T.,<br><br>    Petitioner,<br><br>       v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>    Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Real Party in Interest. | F081671<br><br>(Super. Ct. No. 07CEJ300157-5)<br><br><br>**OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review. Gary L. Green, Commissioner.

T.T., in pro. per. for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Real Party in Interest.

---

[*]    Before Detjen, Acting P.J., Snauffer, J. and DeSantos, J.

-ooOoo-

At a contested jurisdictional and dispositional hearing in August 2020, the juvenile court adjudged now four-year-old A.T. a dependent child under Welfare and Institutions Code section 300, subdivision (b)(1),[1] ordered her removed from her mother, T.T. (mother), and denied mother reunification services under section 361.5, subdivision (b)(10) and (13) on the grounds she failed to reunify with A.T.'s older half sister in another case and resisted court-ordered drug treatment for what the court found was mother's "extensive, abusive and chronic" drug problem. A contested section 366.26 hearing is scheduled for March 9, 2021.

Mother now petitions for writ relief (Cal. Rules of Court, rule 8.450), in propria persona, challenging the sufficiency of the evidence to support the juvenile court's findings and orders and seeking A.T.'s return to her custody. We deny the petition.

**PROCEDURAL AND FACTUAL BACKGROUND**

Three-year-old A.T. was taken into protective custody in March 2020 after mother left her unattended for an hour in her hotel room at the Tachi Palace Casino Resort. She was arrested for child endangerment.

Mother reported she was on vacation at the casino when the hotel staff requested her identification card. She arranged for a friend to watch A.T., who was asleep, while she went to her car to search for her card. However, the clerk at the reception desk would not allow her friend access to her room and the authorities were summoned. A Kings County social worker found marijuana on a piece of paper on the bathroom counter of mother's hotel room. A Kings County deputy sheriff said mother had been gone for an hour and was "high" on methamphetamine. Mother claimed she was only gone for 15 minutes and never used methamphetamine in her life. Surveillance video however confirmed she was away from her hotel room for an hour. The Fresno County

---

[1] Statutory references are to the Welfare and Institutions Code.

2.

Department of Social Services (department) took A.T. into its care and placed her in foster care.

Charles M. identified himself as A.T.'s father but was not listed on any documents indicating he was her father, including her birth certificate, and he was not paying child support. Charles and the maternal grandmother requested placement of A.T. However, the department denied their request after A.T. told the social worker she did not know who they were.

Mother had other minor children at the time who were not in her care. Three of them were adjudged dependents in 2007 because of mother's neglect and domestic violence with their father. Mother was provided reunification services, but they were terminated in 2008 and the children were placed with a guardian. When the guardianship was terminated in 2012, mother was granted primary custody of the children. At the time of these proceedings, they were in the care of their maternal grandmother. In March 2017, a fourth child, M.P., was removed from the custody of her father who had been granted sole legal and physical custody in 2016. M.P. had a black eye, scratches throughout her body and a bald spot behind her ear as if her hair was pulled out. The father reportedly left the child with a babysitter for days at a time. Mother was the noncustodial parent and was assessed for placement. However, the department advised against placing the child with mother because of her history of domestic violence and substance abuse. In November 2017, mother was ordered to participate in parenting classes, substance abuse, mental health, and domestic violence assessments and any recommended treatment and random drug testing. The juvenile court terminated her reunification services in July 2018. The father's services were continued until November 2018 at which time the court terminated them and set a section 366.26 hearing. In February 2019, the court ordered M.P. into a legal guardianship.

In March 2020, the department filed a dependency petition on A.T.'s behalf, alleging mother's methamphetamine abuse placed her at a substantial risk of harm. (§ 300, subd. (b)(1).) Charles was listed on the petition as A.T.'s alleged father.

Mother was released from jail several days before the petition was filed and requested placement. On March 19, 2020, the juvenile court ordered A.T. detained and offered mother only random drug testing pending the dispositional hearing. Mother entered Malibu Recovery Program on March 31, 2020, and tested positive for marijuana and methamphetamine. She was also eight months pregnant.

On April 16, 2020, mother told social worker Tiffany Williams she was residing at the Gold Coast Sober Living Home in Ventura, California. She wanted to reunify with A.T. and wanted her placed with her in recovery or with the maternal grandmother. When asked what services she needed, mother stated, "none, it's a game nobody wants to help and will pay for what I need myself." The following day, mother gave birth to a baby girl and tested positive for THC. Mother told the hospital staff that she lived in Alabama and was just visiting family in Ventura. A protective custody warrant was issued four days later but was not served because mother left the hospital with the baby against medical advice.

On April 20, 2020, mother advised the department she was in treatment at Cliffside Malibu Outpatient Services Program in Malibu, California (Cliffside). She refused to disclose the baby's name and said she was returning to Alabama after she finished treatment. The department contacted Cliffside but was unable to confirm mother was enrolled in the program. The Los Angeles County Child Protective Services received a referral regarding the baby but was unable to act on it without an address.

On April 21, 2020, mother participated on a conference call with Nicole Stone, her substance abuse counselor, and several social workers, including Williams, to discuss reunification services. Mother said she was living at Gold Coast Sober Living Home with her newborn, had a sponsor and was participating in random drug testing and

4.

attending parenting classes. She asked to have A.T. placed with her in the program. She last used drugs before A.T. was removed from her care, approximately one or two months before. Stone reported the clients participate in random drug testing at the home and mother's last drug test was on April 21, which yielded a positive result for marijuana. Mother said she weighs about 250 pounds and was told it would take some time for the marijuana to leave her system.

Williams informed mother she met the criteria for denial of reunification services because the juvenile court previously ordered services for her. Mother questioned why that was a consideration when she reunified with her children. As for M.P., she pointed out that she was removed from her father. A.T. had been in her care all her life and it was not acceptable that she was bonding with someone else. She was doing everything asked of her by attending parenting classes and submitting to drug testing and would continue to pay for her own services. She did not know what else the department wanted her to do.

Mother acknowledged her mistake in leaving A.T. alone but denied she was getting "high." She believed she had a substance abuse problem, which was why she was in a rehabilitation program. Her situation 15 years ago was different because she was involved in a domestically violent relationship, which was not her fault. She planned to stay in sober living until she could resume custody of A.T. At the conclusion of the meeting, the social workers decided the department would not recommend reunification services for mother.

On April 21, 2020, Ventura County informed the department a protective custody warrant was granted for mother's baby. Stone informed the county mother and the baby left the sober living home to attend a hearing in Fresno. Mother's rehabilitation specialist said mother was still in treatment and was on an overnight pass and scheduled to return on April 23.

The department attempted three times from April to July 2020 to inquire about mother's status at the Gold Coast Sober Living Home but received no response. It was reported in July that mother had relocated to Alabama. On July 16, 2020, the social worker asked mother where she was living, working, attending outpatient services and drug testing but mother refused to tell the social worker, stating she would only tell her attorney.

In its jurisdictional/dispositional report, the department recommended the juvenile court deny the mother reunification services under section 361.5, subdivision (b)(10) and (13) based on the facts in M.P.'s case in 2017. The department also recommended the court deny reunification services for the two alleged fathers, Charles and another man identified as a possible father.

In a statement of contested issues, mother's retained attorney challenged the applicability of the bypass provisions and attached exhibits—a letter from mother's employer in Alabama, several letters evidencing mother's enrollment in online classes, pictures of drug test results, and a 2007 letter from the department stating mother needed to complete a batterer's treatment program and a mental health assessment.

Mother's attorney submitted the matter of jurisdiction at the hearing on August 25, 2020, and the juvenile court adjudged A.T. a dependent child as alleged in the petition. Counsel objected to the admission of the exhibits attached to mother's contested statement of issues. The exhibits, except the department's 2007 letter, were not admitted into evidence.

Williams testified she was not personally involved in the prior dependency cases but reviewed the reports. She had limited knowledge of what efforts mother was making because mother did not provide her any information or authorize her to obtain the information. Williams was unable to ascertain from her interactions with Stone whether mother was trying to address the issues that gave rise to the prior dependencies and she was cut off from contact with Stone too soon to determine if mother was making

6.

progress. Even though the department was not recommending reunification services, Williams advised mother to participate in parenting, domestic violence, and substance abuse services. However, mother was resistant to suggestions. Mother participated in a drug test on March 16, 2020, and the results were negative. At the meeting on April 21, she said she would test "dirty" but that was expected because she still had marijuana in her system. Mother had not participated in drug testing since April. Williams supervised a telephone visit between mother and A.T. and the visit went well. Williams could not assess the strength of their bond from that visit.

Williams believed mother was trying to take responsibility for her drug use based on her participation in sober living. However, without any drug test results, Williams could not determine if mother was using drugs. Williams believed mother was in denial of the severity of her drug use.

Mother did not testify. Her attorney argued her successful reunification with A.T.'s half siblings and initiative to obtain substance abuse treatment evidenced she made reasonable efforts to resolve her problems. In addition, she had a strong bond with A.T. that she maintained through regular visitation.

The juvenile court ordered A.T. removed from parental custody, denied reunification services as recommended and set a section 366.26 hearing.[2] The court's denial of services under section 361.5, subdivision (b)(10) was based on mother's failure to reunify with M.P. and make a reasonable effort afterward to treat the problems that led to M.P.'s removal. As to subdivision (b)(13), the court found mother has a history of extensive, abusive and chronic use of drugs or alcohol and resisted prior court-ordered

---

[2]     The section 366.26 hearing was originally set for December 8, 2020. It has since been continued, set as a contested hearing on March 9, 2021, and combined with a hearing on a modification petition filed by mother under section 388 requesting placement.

treatment for the problem during a three-year period immediately prior to the filing of the petition in A.T.'s case.

In ruling, the juvenile court explained mother failed to meaningfully address her drug problem. She did not enroll in the random drug testing offered by the department and the department was unable to verify her participation in sober living. Although mother had a strong bond with A.T., she did not take responsibility for her drug use and her attitude about communicating with the department and understanding what she needed to do to change was poor. The court also found providing mother reunification services was not in A.T.'s best interest.

## DISCUSSION

On appeal, we review jurisdictional and dispositional findings and orders under the substantial evidence standard of review. (*In re A.S.* (2011) 202 Cal.App.4th 237, 244.) Substantial evidence exists when the evidence is "reasonable in nature, credible, and of solid value," so that "a reasonable mind would accept [it] as adequate to support [the] conclusion." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) Under this standard of review, we consider the record as a whole, in a light most favorable to the juvenile court's findings and conclusions, and we defer to the juvenile court on any issues of credibility of the evidence. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733−734.) The existence of evidence of some support for a contrary finding will not defeat the finding. (*In re Manuel G.* (1997) 16 Cal.4th 805, 823.) Moreover, "[w]hen the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing evidence, the reviewing court must determine if there is any substantial evidence—that is, evidence which is reasonable, credible and of solid value—to support the conclusion of the trier of fact." (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) However, we bear in mind that the juvenile court was required to make the finding on the heightened clear and convincing evidence standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 994.)

I.       *Mother Forfeited the Issue of Jurisdiction*

Mother denies the allegation she was using methamphetamine, which was the basis for the juvenile court's true finding A.T. is a minor child described by section 300, subdivision (b)(1).  We conclude mother forfeited the issue by failing to raise it for the juvenile court's consideration.

In order to exercise its dependency jurisdiction over a child, the juvenile court must find by a preponderance of the evidence that the child is described by one or more of the subdivisions set forth in section 300.  (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.)  Section 300, subdivision (b)(1), authorizes a juvenile court to exercise dependency jurisdiction over a child if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent … to adequately supervise or protect the child, or … by the inability of the parent … to provide regular care for the child due to the parent's … mental illness, developmental disability, or substance abuse."

The dependency petition contained one count under section 300, subdivision (b)(1), alleging mother's methamphetamine use placed A.T. at a substantial risk of harm.  As factual support, the petition alleged mother was under the influence of methamphetamine and left A.T. unattended in a hotel room.

Mother consistently disputed the deputy's statement she was under the influence of methamphetamine, which was apparently based on the deputy's observation as reported by the department because the record does not contain a positive test result for methamphetamine or the deputy's report explaining how it was determined mother was under the influence.  However, mother's attorney did not challenge the evidence and in fact submitted on the evidence at the jurisdictional hearing.  Consequently, mother forfeited the issue for appellate review and is foreclosed from raising it now.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on other grounds.)

II.  *Substantial Evidence Supports A.T.'s Removal*

Mother also challenges the juvenile court's removal of A.T. on what she claims is a false allegation she was under the influence of methamphetamine.  In addition, she contends that she is a safe parent and offers A.T. a loving home.  As evidence, she attached various documents, including some that were exhibits offered for the hearing but not admitted into evidence.

In order to remove a child from parental custody, the juvenile court must find by clear and convincing evidence there is or would be a substantial danger to the child's physical or emotional well-being if the child were returned home and there are no reasonable means by which the child's physical health can be protected short of removal. (§ 361, subd. (c).)

"The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion." (*In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103−1104.)  "In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re D.B.* (2018) 26 Cal.App.5th 320, 332.)  "A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent.  [Citation.]  'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.' " (*In re N.M.* (2011) 197 Cal.App.4th 159, 169−170.)

A.T. was taken into protective custody because mother cared for her while under the influence of methamphetamine and left her unattended.  Though A.T. had not suffered actual harm, she was at risk of harm because of mother's neglectful conduct. Further, the risk of harm mother posed had not abated by the dispositional hearing.  She

was attempting with questionable success to treat her drug problem and was evading child protective services. Had the juvenile court returned A.T. to mother's custody with continued jurisdiction (i.e., family maintenance services), it is likely mother would have absconded with her.

As for mother's documentary evidence, we are confined to the evidence considered by the juvenile court. (*In re Zeth S*. (2003) 31 Cal.4th 396, 405.) Since the juvenile court did not consider the evidence, neither will we. On the evidence before us, we conclude the juvenile court properly ruled in removing A.T. from mother's custody.

III.    *Substantial Evidence Supports Denial of Reunification Services*

When the juvenile court removes a child from the parents' custody, it must provide reunification services for the child and the child's parents unless it finds any one of the exceptions enumerated in section 361.5, subdivision (b) applies to the parents. (§ 361.5, subds. (a) & (b).) These exceptions to the general rule reflect a legislative determination that attempts to facilitate reunification in some cases are futile and do not serve the child's interests. (*D.B. v. Superior Court* (2009) 171 Cal.App.4th 197, 202.) When the juvenile court determines by clear and convincing evidence that one of the exceptions exists, it is prohibited from providing reunification services unless it finds by clear and convincing evidence that reunification is in the child's best interest. (§ 361.5, subd. (c).)

We review an order denying reunification services for substantial evidence, bearing in mind the juvenile court was required to apply the heightened clear and convincing evidence standard of proof. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96; *Conservatorship of O.B*., *supra*, 9 Cal.5th at p. 994.) Where the court finds more than one of the situations described in subdivision (b) of section 361.5 applies, we can uphold the juvenile court's denial of services order if substantial evidence supports one of them. (See *In re Jonathan B*. (1992) 5 Cal.App.4th 873, 875−876 [where

one basis is supported by substantial evidence the court does not need to consider the sufficiency of evidence to support the other bases.)

A parent may be denied reunification services under section 361.5, subdivision (b)(10), if the juvenile court finds by clear and convincing evidence "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent … failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent … pursuant to Section 361 and that parent … is the same parent … described in subdivision (a) and that, according to the findings of the court, this parent … has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent .…"

Mother contends the juvenile court erred in denying her reunification services under section 361.5, subdivision (b)(10) because M.P. was not removed from her—she was M.P.'s noncustodial parent—and she made reasonable efforts to treat her drug problem.

The fact that mother was M.P.'s noncustodial parent when she was removed is not a bar to applying section 361.5, subdivision (b)(10) to mother in this case. Two courts have addressed this issue and concluded that the statute applies to a noncustodial parent. (*In re Adrianna P*. (2008) 166 Cal.App.4th 44, 59; *In re B.H.* (2016) 243 Cal.App.4th 729, 737.) We are persuaded by their reasoning.

We are not persuaded, however, mother made reasonable efforts to treat her drug problem following M.P.'s removal. While the standard by which a juvenile court measures a parent's efforts in this context is "not synonymous with 'cure,' " (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464), the court may expect a certain degree of success based on aspects of the parent's efforts such as the duration, extent, context, quality and quantity. (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914−915.) The court should always attempt to preserve a parent/child relationship despite a

substantial child welfare history if there is a reasonable basis to conclude that the relationship can be saved. (*Renee J*. at p. 1464.)

The details of mother's efforts to treat her drug problem following M.P.'s removal are scant because the department did not provide them in its report. Mother was ordered to participate in drug treatment, but the record is silent as to whether she completed it. Nevertheless, the juvenile court terminated her services in July 2018 after eight months for noncompliance. We can infer her noncompliance included a failure to complete drug treatment or at least demonstrate satisfactory progress. In March 2020, approximately a year and a half later, mother was found under the influence of methamphetamine with A.T. in her care. On March 31, she entered drug treatment and tested positive for methamphetamine. By April 16, mother was in sober living in Ventura and by April 20, was in outpatient treatment in Malibu. She reported during the teleconference on April 21 that she had a sponsor and was participating in drug testing. Her last drug test was that same day and the result was positive for marijuana, which mother claimed was from prior use. Because mother did not drug test for the department and refused the department access to her confidential treatment information, the department could not assess her progress.

The juvenile court concluded mother had an ongoing substance abuse problem and was in denial as to its severity. Although she was making efforts to treat it, she had taken the unreasonable approach of not drug testing for the department and cooperating in its efforts to assess her progress. On that evidence, the court could properly find mother failed to subsequently make reasonable efforts to treat her drug problem.

The juvenile court also denied mother reunification services under section 361.5, subdivision (b)(13) which authorizes the denial of reunification services, as relevant here, when the court finds by clear and convincing evidence "[t]hat the parent … has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-

ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention .…"[3]

Mother does not dispute that she has the requisite history of drug abuse to qualify under the statute or that she was court ordered to participate in drug treatment. Instead, she contends the last dependency case was too remote for consideration, occurring 13 years ago in 2007. The juvenile court considered the circumstances of M.P.'s case in applying section 361.5, subdivision (b)(13) to mother not those of the 2007 dependency case. Further, it is not the timing of the treatment that triggers the statute but rather when the resistance to treatment occurs. Under the statute, resistance must occur within the three years prior to the current case. (*Laura B. v. Superior Court* (1998) 68 Cal.App.4th 776, 780.) Here, mother was court ordered in November 2017 to complete drug treatment. She resisted treatment in this most recent case by resuming drug use and refusing to participate in drug testing for the department.

We conclude substantial evidence supports the juvenile court's denial of reunification services to mother under subdivision (b)(11) and (13) of section 361.5 and find no error.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).

---

[3]     Subdivision (b)(13) also applies to a parent who has failed or refused to comply with a program of drug or alcohol treatment described in a case plan on at least two prior occasions, even though the programs identified were available and accessible.