[No. A123439. First Dist., Div. Five. Feb. 18, 2009.]

D.B., Petitioner, v.
THE SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent;
HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES et al., Real Parties in Interest.

COUNSEL

Edward A. Shrock, County of Humboldt Conflict Counsel, for Petitioner.

No appearance for Respondent.

Wendy B. Chaitin, County Counsel, and Gena Rae Eichenberg, Deputy County Counsel, for Real Parties in Interest.

OPINION

NEEDHAM, J.—D.B. (father) seeks extraordinary review of an order setting a hearing to develop a permanent plan for his son A.H. pursuant to Welfare and Institutions Code section 366.26.[1] (Cal. Rules of Court, rule 8.452.) Father argues that the juvenile court improperly denied him reunification services and failed to comply with the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.). We conclude the court did not err in denying father reunification services, but we grant the petition to secure compliance with the ICWA.

## I. BACKGROUND

A.H. was delivered by R.H. (mother) in July 2008 after she was rushed to the hospital following an automobile accident. He was two months premature (weighing just two pounds, four ounces) and tested positive for amphetamines and other drugs. Mother died of her injuries a few days later. Father was not married to mother but was identified as A.H.'s probable biological father.

The Humboldt County Department of Health and Human Services (DHHS) filed a dependency petition on August 1, 2008. Father was granted presumed father status on August 5, 2008. A.H. was initially detained at the hospital, where he continued to receive necessary medical treatment. He was considered a special needs child due to several conditions associated with his premature birth and prenatal drug exposure.

On August 25, 2008, the juvenile court sustained the petition following father's submission on the social worker's report. It found that A.H. was a person described by section 300, subdivision (g) in that (1) mother had died leaving no provision for his support, (2) the man to whom mother was legally married denied that he was the biological father and was unable and unwilling to provide support; and (3) father, the presumed father, was currently incarcerated at the Humboldt County Correctional Facility and was unable to provide care and support.

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The case was set for a contested dispositional hearing. The social worker's report indicated that father was 41 years old and had three other children, none of whom were in his custody. He had started using alcohol, marijuana and methamphetamine during his teenage years and has struggled with drug addiction since that time. His criminal history consists of a 1985 misdemeanor conviction of receiving stolen property, a 1988 misdemeanor conviction of receiving stolen property, a 1988 felony conviction of residential burglary, a 2000 misdemeanor conviction of inflicting corporal injury on a cohabitant, misdemeanor convictions in 2002 of driving without a license, resisting arrest and possessing a hypodermic needle, and felony convictions in 2003 of receiving stolen property. Father was sentenced to four years in prison on the 2003 case.

In March of 2007, father twice violated the conditions of his parole by continuing his drug use, and he was ordered by the parole authorities to complete a residential treatment program at the Humboldt Recovery Center (HRC). He completed that program in January 2008. On July 27, 2008 (during the week that followed mother's death and A.H.'s birth), father was arrested for possessing marijuana and using methamphetamine and was ordered by the parole authorities to complete 90 days at HRC upon his release from county jail. On September 3, 2008, father was released from jail with instructions to report to HRC and his parole officer. He did not report, and was arrested. He was scheduled to arrive at HRC for inpatient treatment on September 8, 2008, but failed to do so and continued to use drugs. He began his treatment at HRC the following day and, according to the social worker, "seemed committed to creating a clean and sober lifestyle for himself."

Father wanted to obtain custody of A.H. According to the social worker's report, he "has an unrealistic expectation that he will be able to change his life in a significant enough manner to be able to create a stable and wholesome home that would be safe and nurturing for [A.H.] He has a limited understanding of the kinds of problems and challenges that a premature child faces and fails to grasp his own limitations as a parent. [Father] has a long history of drug addiction and has not been able to provide a suitable home for his other children. A number of maternal relatives, including maternal grandmother, have indicated that they do not believe [father] will be able to be an adequate parent for minor [A.H.]" A.H. had been released from the hospital and placed with nonrelative foster parents.

At the dispositional hearing commencing October 24, 2008, father indicated that he wanted to obtain custody of A.H. through a reunification plan. DHHS sought a bypass of reunification services pursuant to section 361.5, subdivision (b)(13), based on father's history of drug use and his failure to comply with court-ordered treatment. The court agreed with DHHS and

denied services under this provision, setting the case for a permanency planning hearing under section 366.26. The court also determined that, contrary to father's arguments, the ICWA did not apply to this case.

## II. *DISCUSSION*

### A. *Bypass of Reunification Services*

Father argues that we must reverse the order denying him reunification services under section 361.5, subdivision (b)(13) because the evidence did not establish that he failed to comply with court-ordered drug treatment, as is required for a bypass of services under this subdivision. We disagree.

Section 361.5, subdivision (b) lists a number of situations in which reunification services are likely to be futile and need not be offered to a parent. (*In re Kenneth M.* (2004) 123 Cal.App.4th 16, 20 [19 Cal.Rptr.3d 752].) These exceptions to the general rule reflect a legislative determination that in certain situations attempts to facilitate reunification do not serve the child's interests. (*In re William B.* (2008) 163 Cal.App.4th 1220, 1228 [78 Cal.Rptr.3d 91].) When the juvenile court determines by clear and convincing evidence that one of the enumerated situations exists (§ 361.5, subd. (b)), reunification services shall only be ordered if "the court finds, by clear and convincing evidence, that reunification is in the best interest of the child" (§ 361.5, subd. (c)).

The juvenile court in this case denied father reunification services under section 361.5, subdivision (b)(13), which applies when "the parent or guardian of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that has brought that child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible." The court found that father had an extensive history of substance abuse and that his drug relapses in 2007 and 2008 amounted to resistance of court-ordered treatment because they violated the conditions of his parole from state prison.[2]

---

[2] DHHS presented evidence that father was ordered by the court to complete a treatment program in 2002 as part of an earlier criminal case, but any failure to comply with this order fell outside the three-year period specified by section 361.5, subdivision (b)(13). The juvenile court explicitly limited its ruling to the parole violations in 2007 through 2008. We therefore reject father's argument that the court improperly took judicial notice of court documents pertaining to the earlier case and conclude that the consideration of these documents was not prejudicial in any event.

In so ruling, the trial court rejected father's argument that because the first prong of section 361.5, subdivision (b)(13) is limited to *court-ordered* treatment, it did not extend to treatment conditions imposed by the parole authorities. The court reasoned that in light of statutory law requiring a parole period for all prisoners who are released (Pen. Code, § 3000, subd. (a)(1)), a parole condition requiring drug treatment is a "consequence of" and "aspect of" the court's original sentencing order, and may be directly traced to that order.

Ordinarily, the propriety of an order denying reunification services is a factual one that we would review under the substantial evidence test. (See *In re Brian M.* (2000) 82 Cal.App.4th 1398, 1401 [98 Cal.Rptr.2d 881].) Here, however, the facts are essentially undisputed and the issue before us is primarily a question of statutory interpretation: Does a parent's resistance to treatment ordered as a condition of parole amount to resistance to "court-ordered treatment" under section 361.5, subdivision (b)(13)? "It is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law [citation] which is subject to de novo review on appeal." (*Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951 [268 Cal.Rptr. 624].)

■ Our task in construing a statute is to ascertain the legislative intent to permit us to effectuate the purpose of law. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) Looking first to the statutory language, we give the words their ordinary and usual meaning and construe them in the context of the statute as a whole and the entire scheme of law of which it is a part. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].) If the language is clear and a literal construction would not result in absurd consequences that the Legislature did not intend, the plain meaning governs. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) If the language is ambiguous, we may consider a variety of extrinsic aids, including the purpose of the statute, legislative history, and public policy. (*Ibid.*) When interpreting an ambiguous statute, "we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)

■ Construing the law as father suggests would produce an absurd consequence. We begin with the premise that a parent who has failed to participate in drug or alcohol treatment ordered directly by the court as a condition of probation in a criminal case may be denied services under section 361.5, subdivision (b)(13) if the other criteria of that provision are met. (See

*In re Brooke C.* (2005) 127 Cal.App.4th 377, 383 [25 Cal.Rptr.3d 590].)[3] There is no meaningful distinction between treatment ordered as a condition of probation and treatment ordered as a condition of parole for purposes of determining whether a parent's failure to comply signifies a substance abuse problem so intractable that the provision of reunification services would be a waste of time. In both situations, the parent faces incarceration as a consequence and has ample incentive to comply with the treatment condition imposed.

Father suggests that treatment ordered as a condition of probation is different from treatment ordered as a condition of parole because parole conditions are imposed in the discretion of the parole authorities rather than by the court directly (Pen. Code, § 3053, subd. (a)), and typically they are not reviewed by any court unless the prisoner files a petition for writ of habeas corpus. But father does not offer any reason why the Legislature would consider resistance to treatment while on parole less probative of a person's ability to reunify with his children than would resistance to treatment while on probation.

■ In light of these considerations, and to avoid an absurd result, we construe section 361.5, subdivision (b)(13)'s reference to "court-ordered treatment" to include treatment ordered as a condition of parole. As the trial court observed, parole conditions, while not ordered directly by the court, are directly traceable to the court order imposing a prison sentence. Construing the phrase "court-ordered treatment" to include treatment required as a condition of parole that flows from a court's original sentencing order furthers the statutory purpose of section 361.5, subdivision (b)(13) by allowing the court to identify parents who, due to their history of substance abuse and resistance to treatment in the face of penal or other legal sanctions, are unlikely to benefit from reunification services.

This construction is consistent with the legislative history of section 361.5, subdivision (b)(13). Earlier versions of section 361.5, subdivision (b) allowed a juvenile court to deny services to a parent with "a history of extensive, abusive, and chronic use of drugs or alcohol" who "has resisted prior treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention . . . ." (§ 361.5, former subd. (b)(13); Stats. 2001, ch. 653, § 11.3; see *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72–73 [74 Cal.Rptr.2d 770].) This

---

[3] Section 361.5, subdivision (b)(13) applies when the parent has resisted "court-ordered treatment" *or* has twice refused or failed to comply with treatment ordered as part of the case plan in the dependency case. "Court-ordered treatment" thus has a broader meaning than treatment ordered by the juvenile court as a component of the dependency case itself, and by its plain language extends to treatment ordered as part of unrelated criminal matters.

provision, which did not distinguish between court-ordered treatment and voluntary treatment, had been construed by at least one court to mean that the mere failure to seek voluntary treatment could suffice to show resistance to treatment. (*In re Levi U.* (2000) 78 Cal.App.4th 191, 200–201 [92 Cal.Rptr.2d 648]; see also *Karen S. v. Superior Court* (1999) 69 Cal.App.4th 1006, 1010 [81 Cal.Rptr.2d 858] ["a parent can actively resist treatment for drug or alcohol abuse by refusing to attend a program . . . ."].)

In 2002, the Legislature passed Assembly Bill No. 1694, which, among other things, amended section 361.5, subdivision (b) to add the current language of paragraph (13), which specifies that the resistance to treatment necessary to trigger a bypass of reunification services must be resistance to *court-ordered* treatment. (Stats. 2002, ch. 918, § 7; Assem. Bill No. 1694 (2001–2002 Reg. Sess.).) A Senate analysis of this amendment explained that the bill "[c]larifies that reunification services need not be provided to a parent or guardian when one of several conditions is met, including that the parent or guardian has an extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment (not voluntary treatment) for this problem during a three-year period immediately prior." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1694 (2001–2002 Reg. Sess.) as amended Aug. 26, 2002, p. 2.) The analysis further states that the bill "[c]larifies that in order to completely forgo reunification services due to a parent's failure to complete past drug treatment, the previous drug treatment must have been ordered by the court, not entered into voluntarily." (*Id.* at p. 3.)[4]

The 2002 amendment was thus designed to differentiate between court-ordered and voluntary treatment and to ensure that a parent's failure to seek voluntary treatment would not itself result in a denial of reunification services. Treatment ordered as a condition of parole is by no means voluntary. It would not, therefore, violate the purpose of section 361.5, subdivision (b)(13) to construe "court-ordered treatment" to include treatment required as a condition of parole.[5]

■ Having concluded that resistance to "court-ordered treatment" under section 361.5, subdivision (b)(13) includes resistance to drug treatment

---

[4] We grant DHHS's request that we take judicial notice of this analysis.

[5] The distinction between voluntary and court-ordered services in section 361.5, subdivision (b)(13) is a rational one, because a person who declines to participate in voluntary treatment does not do so at the peril of incarceration or other legal sanction. Past resistance to voluntary treatment is less likely to mean that treatment as a component of reunification services will be futile, because it may well be that the prospect of losing one's child will inspire an abuser of drugs and alcohol to reform even though he or she has not previously sought or completed treatment. But resistance to treatment ordered as a condition of parole or probation, in the face of possible reincarceration, suggests that a person is less likely to move toward sobriety in a timely way and reunify with his or her child.

ordered as a condition of parole, we find no error in the court's order denying father reunification services. Father does not dispute that his pattern of substance abuse since his teens met the first prong of subdivision (b)(13), which requires a "history of extensive, abusive, and chronic use of drugs or alcohol." (See *Randi R. v. Superior Court, supra*, 64 Cal.App.4th at p. 73 [criterion met when 38-year-old mother had been using drugs since age 12 and drinking since age nine and had relapsed following attempts at rehabilitation].) Father does not assert that the evidence was insufficient to show he "resisted" the drug treatment ordered by the parole department. (See *In re Brian M., supra*, 82 Cal.App.4th at p. 1402 [proof of "resistance" may "come in the form of dropping out of programs, or in the form of resumption of regular drug use after a period of sobriety"].) Finally, he does not challenge the sufficiency of the evidence supporting the trial court's finding that reunification services were not in the child's best interest (§ 361.5, subd. (b); *In re Albert T.* (2006) 144 Cal.App.4th 207, 216–217 [50 Cal.Rptr.3d 227]), nor does he argue that the court abused its discretion in making this finding (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474 [73 Cal.Rptr.2d 793]). Father has not demonstrated any basis for setting aside the juvenile court's order denying services.

### B. *Compliance with the ICWA*

At the first hearing on August 4, 2008, father was asked to complete the ICWA-020 Parental Notification of Indian Status form. He apparently did not do so. On August 7, 2008, the social worker met with father while he was incarcerated in the county jail prior to his entry into the HRC program. When she asked him about his family background, he advised her that he had Native American blood. On August 25, 2008, DHHS sent ICWA-030 notices of the jurisdictional hearing that was held that same day to the Bureau of Indian Affairs (BIA) as the agent for the Secretary of the Interior (Secretary), as well as to the Secretary directly.[6] The notice sent to the Secretary did not include any identifying information about father but, rather, listed information about mother's husband and his family. The notice sent to BIA listed father as the father and provided some identifying information about his parents and grandparents. It identified one of his paternal grandmothers as "Phyllis [B.]"

On September 8, 2008, DHHS received responses from BIA stating that the notice was being returned because "The family has provided insufficient

---

[6] Under section 224.2, subdivision (a)(4), which incorporates the notice provisions of the ICWA into California law, "Notice, to the extent required by federal law, shall be sent to the Secretary of the Interior's designated agent, the Sacramento Area Director, Bureau of Indian Affairs. If the identity or location of the parents, Indian custodians, or the minor's tribe is known, a copy of the notice shall also be sent directly to the Secretary of the Interior, unless the Secretary of the Interior has waived the notice in writing and the person responsible for giving notice under this section has filed proof of the waiver with the court."

information substantiating any federally recognized tribe. The *family* must provide a history back to the year 1900 with names, birth dates, and/or birthplaces of ancestors to help in establishing a biological link with the original ancestral tribal member(s)." DHHS sent no further ICWA notices.

At the dispositional hearing, father testified that he had informed the social worker during their meeting at the jail that his father's mother was Native American. Her name was "Phyllis [J.]," although that was not her name when her son (father's father) was born and he did not know her maiden name.[7] Father testified that he gave the name "Phyllis [J.]" to the social worker, but later contradicted himself and testified he had not known his grandmother's last name and did not provide it to the social worker. He did not know whether his grandmother had been married to his grandfather when his father was born. Father did not know whether his father or grandmother had been enrolled in an Indian tribe. He had an uncle in Oklahoma who would know more about the family history (Darrell A.), but he was not sure whether he had given the social worker his uncle's name. Although the social worker's notes from the meeting indicate that father was unable to provide his uncle's name, father believed this statement was incorrect because he knows all of his uncles' names. The social worker confirmed during her testimony that she had met with father at the jail, but did not confirm or dispute any of the details of their conversation regarding his possible Native American heritage.

■ The juvenile court determined that based on the evidence before it, the ICWA did not apply. Under the ICWA, an "Indian child" is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The court found that A.H. was not an Indian child under this definition because though he was "potentially" eligible for membership in a tribe, he was not a member of any tribe and was not the child of a member of any tribe.

■ The court appears to have relied on A.H.'s and father's lack of enrollment in any tribe to conclude that neither A.H. nor father was a tribal "member" as necessary for Indian child status under the ICWA. (25 U.S.C. § 1903(4).) Lack of enrollment is not dispositive of tribal membership: "Each Indian tribe has sole authority to determine its membership criteria, and to decide who meets those criteria. [Citation.] Formal membership requirements differ from tribe to tribe, as does each tribe's method of keeping track of its own membership. [Citation.]" (*In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1300 [112 Cal.Rptr.2d 692].) " 'Enrollment is not required . . . to be

---

[7] It is unclear from the record whether this is the same individual as the "Phyllis B." identified in the ICWA notice.

considered a member of a tribe; many tribes do not have written rolls. [Citations.] While enrollment can be one means of establishing membership, it is not the only means, nor is it determinative. [Citation.] . . .' . . . ██ Moreover, a child may qualify as an Indian child within the meaning of the ICWA even if neither of the child's parents is enrolled in the tribe. [Citation.]" (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254 [126 Cal.Rptr.2d 639].) As the court acknowledged, A.H. was potentially eligible for membership in an Indian tribe. That neither he nor father was currently enrolled did not resolve the issue. (See § 224.3, subd. (e)(1) ["Information that the child is not enrolled or eligible for enrollment in the tribe is not determinative of the child's membership status unless the tribe also confirms in writing that enrollment is a prerequisite for membership under tribal law or custom"].)

We next consider whether BIA's response supported the court's determination that A.H. was not an Indian child. Although BIA was unable to determine A.H.'s Indian status based on the information submitted to it before the dispositional hearing, father's testimony at that hearing provided the court and DHHS with additional information about his family. DHHS concedes that the case must be remanded so that it may send out ICWA notices that include this additional information. We accept the concession and will grant the petition in part for the limited purpose of securing compliance with the ICWA.

## III. *DISPOSITION*

The petition is granted solely for the purpose of ensuring compliance with the ICWA; in all other respects, the petition is denied on the merits. Let a peremptory writ of mandate issue directing the juvenile court to (1) vacate its order setting the case for a hearing under section 366.26, and (2) order DHHS to provide ICWA notices containing the updated information about father's family to the BIA, Secretary and any appropriate Indian tribes. If, following such notice, the BIA or any tribe determines that A.H. is an Indian child as defined by the ICWA, or if other information is presented showing A.H. is an Indian child as defined by the ICWA, the juvenile court shall hold a new dispositional hearing and shall conduct it and all further proceedings in conformance with the ICWA. If A.H. is not determined to be an Indian child, or if no response is received indicating he is an Indian child, the juvenile court shall reset the hearing under section 366.26. (See *Justin L. v. Superior Court* (2008) 165 Cal.App.4th 1406, 1410 [81 Cal.Rptr.3d 884].)

The order denying father reunification services pursuant to section 361.5, subdivision (b)(13) is affirmed and the petition is denied as to that order.

The request for a stay of the March 2, 2009 section 366.26 hearing is denied as unnecessary in light of our disposition.

This decision is final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(3).)

The order to show cause, having served its purpose, is hereby discharged.

Jones, P. J., and Simons, J., concurred.

On February 26, 2009, the opinion was modified to read as printed above.