Filed 5/24/21  T.A. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| T.A.,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>    Respondent;<br><br>KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>    Real Party in Interest. | F082362<br><br>(Super. Ct. No. JD141063-00)<br><br>**OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Marcos R. Camacho, Judge.

Steven L. Bynum for Petitioner.

No appearance for Respondent.

Margo A. Raison, County Counsel, and Jennifer E. Feige, Deputy County Counsel, for Real Party in Interest.

---

[*]    Before Detjen, Acting P.J., Franson, J. and DeSantos, J.

-ooOoo-

Petitioner, T.A. (mother), seeks an extraordinary writ from the juvenile court's orders denying her reunification services under Welfare and Institutions Code section 361.5, subdivision (b)(10) and (11)[1] and setting a section 366.26 hearing as to her now 11-month-old daughter, S.A. Subdivision (b)(10) and (11) of section 361.5 apply to a parent whose reunification services and parental rights to a sibling were terminated and the parent failed to make subsequent reasonable efforts to treat the problem requiring the sibling's removal. Mother contends the juvenile court erred in denying her reunification services because substantial evidence supported a finding that she made subsequent reasonable efforts. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

At the time these dependency proceedings were initiated in June 2020, mother had nine minor children,[2] including S.A. (the baby), none of whom were in her custody. David is the father of her three youngest children.

Dependency proceedings were initiated when the Kern County Department of Human Services (department) was notified mother gave birth to the baby. Mother tested negative for drugs and was bonding with the baby. However, she had recently failed to reunify with four of her other children and a section 366.26 hearing was then scheduled for August 2020. The precipitating event occurred in April 2018 when mother assaulted David in the shower. They physically fought and fell on the bed where one of the children was laying. The child received a large scratch on her inner thigh and David was arrested. There were domestic violence incidents prior to that in which David broke a front window of the residence and kicked in the front door. On one occasion, mother struck him in the head with a wrench. Mother and David were ordered to participate in

---

[1]     Statutory references are to the Welfare and Institutions Code.

[2]     She also had an adult daughter and a child who was deceased.

2.

domestic violence counseling as a perpetrator, substance abuse counseling, parenting/child neglect counseling and random drug testing. The court added mental health counseling and conjoint counseling at the six-month review hearing. Family reunification services were terminated at the 18-month review hearing in February 2020.

A social worker placed a protective hold on the baby at the hospital. Mother reported she and David separated in December 2019 when he left the home and ended their relationship in February 2020 after their reunification services were terminated. She completed the counseling required by her services plan, including domestic violence counseling, and participated in random drug testing. She filed a modification petition (§ 388) seeking return of the siblings to her custody. The petition was denied because she was still in a relationship with David. He was seen at her home fixing the plumbing and was also on the lease for the house. She said their last domestic violence incident was two years before. The last time she saw David was when he took her to the hospital to deliver the baby. Their goal was to live together and raise the baby. Her drug of choice was methamphetamine, but she had not used the drug since November 5, 2018, and agreed to drug test. She reported no other drug use. She was seeing a therapist monthly for codependency and grievance counseling.

After the baby's removal, mother promptly entered residential substance abuse treatment, enrolled in parenting and domestic violence classes, and planned to resume mental health therapy. She was also willing to drug test. The baby was placed in foster care.

The juvenile court ordered the baby detained and set the matter for a hearing on jurisdiction and disposition, which was continued until October 29, 2020. Meanwhile, on October 15, 2020, the juvenile court terminated mother's parental rights to the baby's half-sibling, T.L.

On October 29, 2020, the juvenile court deemed David the baby's presumed father, sustained allegations she was a minor described under section 300,

3.

subdivisions (b) (failure to protect) and (j) (abuse of sibling) and continued the matter for a dispositional hearing in January 2021. The hearing was continued and conducted as a contested dispositional hearing on February 5, 2021.

Mother and David maintained contact with the department and regularly visited the baby. Mother completed a two-month residential substance abuse treatment program in August 2020 and transitioned immediately into a sober-living home where she remained and was employed as the live-in house manager. She completed a parenting class in September 2020 and had one class left to complete a 26-week domestic violence class. She submitted to eight voluntary drug tests which yielded negative results except for one positive result for ethanol and one that indicated diluting/flushing. David had not enrolled in any services. He submitted to one drug test which yielded a positive result for methamphetamine.

Despite mother's participation in reunification services, the department recommended the juvenile court deny her reunification services under section 361.5, subdivision (b)(10) and (11) because her reunification services and parental rights in the case of the siblings were terminated and she failed to make reasonable efforts to treat the domestic violence in her relationship with David. She claimed she and David were no longer in a relationship, but he was found in her home and they planned to raise the baby together. She also commented in September 2020 on a social media post about a vibrating condom that she was going to buy to use with David. At a team decision meeting in December 2020, mother was asked about the fact that her adult daughter and David lived in the same house. She said she wanted her adult daughter " 'out of that home' " and said there was an eviction order because the rent was unpaid. She was also asked about a rumor David bought her a car. She denied he bought her a car, stating she rode the bus.

The department recommended the juvenile court deny David reunification services under section 361.5, subdivision (b)(10), (11) and (b)(13) and set a section 366.26

4.

hearing to select adoption for the baby with her foster parents. The foster parents were committed to adopting the baby and no family members had applied for placement.

Mother testified at the contested dispositional hearing that she filed for a restraining order earlier in the week. She visited the baby twice a week for two hours and visits went well. When asked what was motivating her this time, mother acknowledged she previously completed her case plan but did not have the strength to separate from David. However, she had gained a new sense of independence and did not need to rely on him anymore. She was not using drugs when she entered substance abuse treatment, having been clean and sober for two years. If required to complete a 52-week domestic violence class, she would comply.

Mother claimed she severed her relationship with David two months before the baby was born and her only contact with him was at the court hearings. She denied having any contact with David on social media. She acknowledged drinking a glass of wine while dining out with her daughter, which she believed produced the positive result for ethanol the following day. She did not believe it jeopardized her sobriety since she did not drink alcohol on a regular basis.

Tamisha Harris, operator of a nonprofit mother-child retreat, assisted mother with preparing for visitation, obtaining employment and housing and filing a restraining order. Mother was very receptive to her suggestions and regularly asked her what more she could do. She believed mother made a tremendous effort to reunify with the baby and was in favor of mother reunifying with her.

The juvenile court found mother had not made reasonable efforts to treat her domestic violence problem with David. Specifically, the court cited the fact that mother waited until just before the hearing to pursue the restraining order even though she knew domestic violence with David was one of the major concerns the department had about offering her reunification services. The court removed the baby from parental custody,

5.

denied the parents reunification services as recommended and set a section 366.26 hearing.

## DISCUSSION

When the juvenile court removes a child from parental custody at the dispositional hearing, it must provide reunification services to the child and the parents. (§ 361.5, subd. (a).) The purpose of providing reunification services is to "eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible." (*In re Baby Boy H*. (1998) 63 Cal.App.4th 470, 478.) However, subdivision (b) of section 361.5 exempts from reunification services " ' "those parents who are unlikely to benefit" ' [citation] from such services or for whom reunification efforts are likely to be 'fruitless.' " (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1120.) The 17 different paragraphs set forth in subdivision (b) of section 361.5— which authorize denial of reunification services under various specific circumstances—are sometimes referred to as " 'bypass' " provisions. (*Melissa R. v. Superior Court* (2012) 207 Cal.App.4th 816, 821.)

Once it has been determined one of the bypass provisions applies, " ' "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." ' " (*In re William B*. (2008) 163 Cal.App.4th 1220, 1227.) These exceptions to the general rule reflect a legislative determination that attempts to facilitate reunification in some cases are futile and do not serve the child's interests. (*D.B. v. Superior Court* (2009) 171 Cal.App.4th 197, 202.) Thus, if the juvenile court finds a provision of section 361.5, subdivision (b), applies, the court "shall not order reunification for [the] parent … unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).) "The burden is on the parent to … show that reunification would serve the best interests of the child." (*In re William B*., at p. 1227.)

On appeal, we review dispositional findings and orders under the substantial evidence standard of review. (*In re A.S.* (2011) 202 Cal.App.4th 237, 244.) Substantial evidence exists when the evidence is "reasonable in nature, credible, and of solid value," so that "a reasonable mind would accept [it] as adequate to support [the] conclusion." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) Under this standard of review, we consider the record as a whole, in a light most favorable to the juvenile court's findings and conclusions, and we defer to the juvenile court on any issues of credibility of the evidence. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733−734.) Moreover, in reviewing the record for substantial evidence, we bear in mind the juvenile court was required to make the finding on the heightened clear and convincing evidence standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995−996.)

As relevant here, section 361.5, subdivision (b)(10) provides that reunification services need not be provided if, in the case of a sibling, the juvenile court previously terminated reunification services because the parent failed to reunify with the sibling, and the court finds that the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling." Under section 361.5, subdivision (b)(11), reunification services need not be provided if the parental rights of the parent with respect to a sibling have been terminated, and the court finds that "this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling."

There is no question the bypass provisions apply insofar as mother's reunification services and parental rights were terminated because she failed to reunify with the baby's siblings. The only question is whether substantial evidence supports the juvenile court's finding mother failed to make reasonable efforts to treat the domestic violence that required the siblings' removal. We conclude that it does.

The siblings were removed because mother and David engaged in domestic violence that threatened the children's safety. Mother was provided a host of services,

including domestic violence counseling, but failed to reunify. Despite the loss of custody of her children, she maintained her relationship with David and planned to raise the baby with him. She had no intention of separating from him even though he was not participating in services and continued to use methamphetamine. When pressed about her relationship with David, mother claimed they separated but was inconsistent as to when the separation occurred. She said they separated in December 2019 when he left the home but also said they separated in February 2020 when their reunification services were terminated. However, David drove her to the hospital in June 2020 to deliver the baby and mother stated at that time they intended to raise the baby together. She also said she only saw him at the court hearings but then inferred on social media that they had an ongoing sexual relationship as of September 2020. Perhaps most telling, she waited until the eve of the dispositional hearing to file a restraining order. Not only did she maintain the possibility of contact up until then, but she also demonstrated by her failure to take that definitive step that she was not serious about severing her relationship and restricting her contact with him.

The crux of mother's argument is that her many efforts to comply with the previously ordered reunification plan support a finding she made reasonable efforts subsequent to the siblings' removal. Indeed, mother was prompt to reengage in services after the baby was taken into protective custody and received positive reviews by her care providers. However, she knowingly ignored the one issue—domestic violence—that she needed to effectively address in order to reunify with the baby. On that evidence alone, the juvenile court could properly find she failed to make reasonable efforts as required under section 361.5, subdivision (b)(10) and (11).

Mother also contends the juvenile court should have found providing her reunification services served the baby's best interest. The statute, however, only requires the court to make a best interest finding if it finds the bypass provision applies and orders reunification services. Since the court did not order services, it did not and was not

required to make the finding. Even so, mother bore the burden of proof on the issue and the only evidence presented was that she and the baby enjoyed positive and appropriate visitation.

We find no error.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).