Filed 2/25/22  In re Summer B. CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re Summer B., a Person Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SHAWNA M.,<br><br>        Defendant and Appellant. | A161209<br><br>(Sonoma County<br>Super. Ct. No. DEP4972) |

This is an appeal from the juvenile court's jurisdiction and disposition orders in a dependency matter involving defendant, Shawna M. (mother), and her daughter Summer B. (minor).[1]  Mother contends the court's decision to bypass her for reunification services pursuant to Welfare and Institutions Code[2] section 361.5, subdivision (b)(13) was not supported by substantial evidence.  She further contends the court abused its discretion in finding

---

[1] Minor's father, John B. (father), is not a party to this appeal.

[2] Unless otherwise stated, all statutory citations herein are to the Welfare and Institutions Code.

1

reunification would not be in minor's best interests. We disagree with mother and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Initial Dependency Proceedings (September 2016).*

In September 2016, when minor was seven years old, the Sonoma County Human Services Department (department) filed a juvenile dependency petition pursuant to section 300, subdivisions (a) and (j), alleging, among other things, that father physically abused minor by spanking and hitting her with a belt and that minor's older half sibling was previously the subject of other dependency proceedings.[3]

According to the jurisdiction/disposition report filed in October 2016, mother and father were never married. The pair remained together until minor was three years old, at which time mother and minor moved out. Father cared for minor on weekends and whenever mother was arrested. Eventually, father took over as minor's primary caregiver, and he has had full custody since 2015.

Minor was diagnosed with an adjustment disorder. She had frequent tantrums and violent outbursts. While placed in an emergency foster home, minor attempted to stab staff members with pencils and bit three staff members during one four-hour episode.

Mother had an extensive history of substance abuse-related arrests; convictions, including DUI convictions in 2013 and 2016; and probation violations. She was incarcerated when the section 300 petition was filed and had not had significant involvement in minor's life for at least two years.

---

[3] The separate dependency proceedings that involved mother's older daughter began in 2004. Mother's reunification services in that case were terminated in 2005. And in August 2006, the juvenile court awarded the child's father sole legal and physical custody and the case was dismissed.

Minor said she missed mother but she " '[did not] want to talk about her.' " The social worker reported that mother shoplifted, smoked marijuana, and consumed alcohol during visits with minor and "would need to demonstrate a significant period of sobriety outside of a treatment program" before the department would consider placement with her.

At the time of the department's addendum report dated October 17, 2016, mother was under court order to participate in an inpatient treatment program and was waiting for an available bed. The probation department deemed mother a high risk to reoffend. Following the October 19, 2016 hearing, the court found based on clear and convincing evidence that mother should be bypassed for reunification services and that reunification would not be in minor's best interests.

In 2017, minor was returned to father's care with family maintenance, and on March 7, 2018, the juvenile court granted father full custody and dismissed the proceedings. Mother, who had not visited minor during the duration of the case, was bypassed for services.

## II. *Present Dependency Proceedings (May 2020).*

The operative amended petition was filed on July 2, 2020, pursuant to section 300, subdivisions (b)(1), (c), and (j), and followed the original petition filed on May 27, 2020. The primary allegations were that mother was unable to provide care and support for minor due to mother's "chronic and extensive substance abuse problem spanning approximately 25 years"; neither parent was capable of providing appropriate care for minor, who had serious mental, emotional and behavioral issues; and minor's half sibling was previously the subject of dependency proceedings and failed to reunify with mother.

According to the department, minor's mental, emotional and behavioral problems had worsened since the 2016 dependency. In addition to her

3

adjustment disorder diagnosis, minor had been diagnosed with posttraumatic stress disorder (PTSD), attention-deficit/hyperactivity disorder, and disruptive mood regulation disorder. The Santa Rosa Police Department (police department) received about 45 calls for service regarding minor between March 2015 and May 2020. Since 2018, minor had also been placed on at least 15 psychiatric holds. After one particular incident in which father grabbed minor and pinned her down in a hotel parking lot during one of her violent outbursts, minor was taken into protective custody by the police department. The department concluded that minor required intensive mental health treatment and services beyond what father was capable of providing in the home. Moreover, mother's "unpredictable and unreliable relationship with [minor] exacerbates and triggers [minor's] mental and emotional trauma . . . ."

The department filed a jurisdiction/disposition report on June 16, 2020. The social worker recommended that mother, who was presumed homeless and transient, be bypassed for services. The department made countless attempts to contact mother, but she either did not respond or waited several days to respond. Mother refused to answer the department's questions without an attorney present and did not want visitation with minor, whom she had not called or visited since minor came under the department's care in May 2020.

The report also contained a lengthy list of mother's arrests, convictions and probation violations, which began in the 1990's and mostly involved DUI's, driving with a suspended license and disorderly conduct. In May 2018, mother was arrested three separate times and was later convicted of possession of a controlled substance, ingesting marijuana in public and obstructing a peace officer.

4

In a June 2020 interview, minor stated she would not discuss mother or father. Minor, living in a foster home, experienced repeated extreme outbursts that involved attempts to run away, property destruction, hurting herself and others, and suicidal and homicidal ideations. She was placed on a psychiatric hold after reporting that she saw an " 'invisible man' " with red eyes staring at her. Minor's psychologist suspected mother was a "huge triggered [*sic*]" for minor and was a contributing factor to each of her hospitalizations. Minor's psychiatrist reported that minor had been through significant trauma and that mother was a significant PTSD trigger for minor. She was unsure whether minor's visual hallucinations were " 'true psychosis hallucinations, or just a PTSD reaction to trauma.' "

The department recommended denying mother reunification services based on her significant, unaddressed substance abuse issues; criminal history; and past failures to comply with court-ordered drug treatment. Noting mother was homeless, had little involvement in minor's life, and was a likely trigger of her mental health problems, the social worker opined minor would not benefit from having mother "continue to pop in and out of her life . . . ."

At the October 2, 2020 jurisdiction/disposition hearing, mother and the social worker testified. The social worker discussed many of the issues raised in the report, such as minor's mental health issues. In addition, the social worker testified that while mother claimed to be working with the department to obtain services, she refused to provide a signed release of information to confirm this or any other proof of her participation. Mother also expressed an interest in starting drug testing but refused to sign a document releasing her results. Mother had not told the department about any recent attendance at a substance abuse program. However, the

5

department had received a letter from Abode Services stating that as of August 25, 2020, mother was " 'making progress toward housing.' "

Mother testified she had been homeless and living in a tent since 2017 but was scheduled to move into an apartment the following week. Mother did not have a visitation schedule with minor in part due to her homelessness. Mother intended to participate in a drunk driving program but had not completed the intake process. She enrolled in Alternatives for Better Living "three weeks ago" and "just started getting . . . classes . . . ." She completed the intake process with Parents Can but did not hear back from the program. She had also been working with a mental health counselor since October 2019.

Mother confirmed a 2018 conviction for methamphetamine possession. She last used methamphetamine "two weeks ago" and last consumed alcohol "two days ago." Between her 2018 conviction and recent enrollment in Alternatives for Better Living, mother had done nothing to address her substance abuse issues. She also acknowledged that in 2018 she violated the terms of her probation following an embezzlement conviction. One such term was not possessing controlled substances or associated paraphernalia. Her probation was set to end in September 2021.

On October 5, 2020, the juvenile court issued its jurisdiction/disposition order. The court sustained the amended petition and removed minor from parents' custody. The court ordered services for father but bypassed mother pursuant to section 361.5, subdivision (b)(13) after finding clear and convincing evidence of her "continued and chronic substance abuse" and that reunification would not be in minor's best interests. The court ordered that mother could receive services through minor's case plan. This appeal followed.

6

Mother contends: (1) substantial evidence does not support the juvenile court's finding under section 361.5, subdivision (b)(13) that she resisted treatment during the three-year period (May 27, 2017, to May 27, 2020) that immediately preceded the filing of the original petition; and (2) the court abused its discretion in finding reunification would not be in minor's best interests.

## I.   *Legal Framework.*

"Generally, the juvenile court is required to provide reunification services to a child and the child's parents when a child is removed from parental custody under the dependency laws." (*In re I.A.* (2019) 40 Cal.App.5th 19, 23.)  Services may be bypassed under certain circumstances when " 'reunification efforts are likely to be "fruitless" [citation].' " (*Ibid.*) Relevant here, such efforts are deemed fruitless "when the [juvenile] court finds, by clear and convincing evidence," that the parent has "a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment described in [a dependency] case plan . . . on at least two prior occasions, even though the programs identified were available and accessible." (§ 361.5, subd. (b)(13).)[4]  Where this provision applies, the court cannot order reunification services for the parent unless it finds by clear and

---

[4] Section 361.5, subdivision (b)(13) was amended effective January 1, 2022.  (Stats. 2021, ch. 201, § 1; Stats. 2021, ch. 585, § 2.5 [ch. 585 prevails].) We apply the version of the statute in effect at that time of the court's October 5, 2020 ruling.

convincing evidence that "reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).)

Thus, where section 361.5, subdivision (b)(13) applies, " ' "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." ' " (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227 (*William B.*).)  Moreover, the parent bears the burden to prove reunification services would be in the best interests of the child.  (*Ibid.*)

A juvenile court has broad discretion to determine under section 361.5, subdivision (c)(2) whether reunification services would be in the best interests of the child.  " ' "An appellate court will reverse that determination only if the juvenile court abuses its discretion." ' [Citations.]  If the juvenile court's finding that further services would be in the [child's] best interest is not supported by substantial evidence, then the order for such services constitutes an abuse of discretion." (*In re A.E.* (2019) 38 Cal.App.5th 1124, 1140–1141.)

In reviewing a finding that a fact has been proved by clear and convincing evidence, the question on appeal is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable the fact was true. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1009.)  In making this determination, we make all presumptions in favor of the lower court's order, considering the evidence in the light most favorable to the prevailing party and resolving conflicts in support of the order.  (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1164.)

II.  ***Substantial evidence supports the juvenile court's section 361.5, subdivision (b)(13) findings.***

"For [section 361.5, subdivision (b)(13)] to apply, two conditions must be satisfied.  The first condition is that the parent has an extensive history of

drug or alcohol abuse.  The second condition may be satisfied in either of two ways.  Either the parent must have 'resisted' a prior court-ordered treatment, one time, within the previous three years.  Or the parent must have failed or refused to comply with a drug treatment program described in a case plan, two times, at any time in the past." (*In re B.E.* (2020) 46 Cal.App.5th 932, 938 (*B.E.*).)  Resistance for purposes of this provision means not passive resistance but "a parent's demonstrated unwillingness to change."  (*Id.* at p. 942.)  Both statutory conditions are met in this case.

Mother concedes the first condition is met because she has an extensive history of substance abuse.  She disputes the second condition, arguing there is no substantial evidence demonstrating that she actively resisted treatment during the three-year period before the petition was initially filed, from May 2017 to May 2020.  Mother's argument fails, as substantial evidence proves that she actively resisted a court-ordered treatment program during the relevant three-year period and/or failed or refused to comply with a drug treatment program described in a case plan at least two times in the past. The following record is relevant.

Mother first received reunification services involving drug and alcohol treatment in the 2004 dependency proceedings involving minor's older half sibling.  These services were terminated in September 2005 after mother twice tested positive for drugs and alcohol at the treatment program, and the father was awarded custody.

When the first dependency petition involving minor was filed in 2016, mother was incarcerated and under a court order to participate in a drug treatment program as part of her criminal case.  Mother was also ordered, at the family maintenance review hearing on September 21, 2017, to voluntarily drug test with the probation department in Napa.  This followed mother's

9

admissions on August 31, 2016, that her marijuana use was ongoing and that she violated the terms of her probation by refusing to test. Based on her substance abuse issues and active resistance to court-ordered treatment or failure to comply with a treatment program described in a case plan, mother was bypassed for services under the same provision invoked here, to wit, subdivision 361.5, subdivision (b)(13).

In the present proceedings, the department's June 18, 2020 report stated that mother would need to show a significant period of sobriety (among other things) to be considered for placement. Rather than attempt to meet these criteria, mother remained largely uncommunicative and uncooperative with the department. She refused to answer the social worker's questions without her attorney present, failed to submit mandatory information disclosure forms (including the release form for drug test results), and failed to return most of the social worker's e-mails and phone calls in a timely manner. On June 12, 2020, mother told the department she was not interested in visits or phone calls with minor. The department also reported mother had not visited or called minor since the petition was filed on May 23, 2020. Around this time, in May 2018, mother was arrested three times and ultimately convicted of possession of a controlled substance, ingesting marijuana in public and obstructing a peace officer. Shortly thereafter, she was found in violation of her probation in another criminal case.

At the October 2020 disposition hearing, mother testified that she recently enrolled in the Alternatives for Better Living program but acknowledged using alcohol within the past two days and using methamphetamine within the past two weeks.

Thus, notwithstanding mother's recent effort to seek treatment through Alternatives for Better Living and Parents Can, the record as a whole provides substantial evidence that she twice failed or refused to comply with drug treatment programs described in the case plans adopted in her children's dependencies, or actively resisted court-ordered treatment between May 2017 and May 2020. (See *D.B. v. Superior Court* (2009) 171 Cal.App.4th 197, 204 ["There is no meaningful distinction between treatment ordered as a condition of probation and treatment ordered as a condition of parole for purposes of determining whether a parent's failure to comply signifies a substance abuse problem so intractable that the provision of reunification services would be a waste of time. In both situations, the parent faces incarceration as a consequence and has ample incentive to comply with the treatment condition imposed"]; *B.E., supra*, 46 Cal.App.5th at p. 938.) Accordingly, the court's finding that mother is a person as described in section 361.5, subdivision (b)(13) stands.

## III. *The court did not abuse its discretion in finding reunification would not be in minor's best interests.*

Finally, we conclude the court did not abuse its discretion in finding that reunification with mother would not be in minor's best interests. Relevant factors for making this determination include the parent's history, his or her current efforts and fitness, the gravity of the problem that led to the dependency, the parent and child's bond, and the child's need for stability and continuity. (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 66–67; *William B., supra*, 163 Cal.App.4th at p. 1228.) In this case, none of these factors weighs in favor of mother. Not only does mother's history demonstrate decades of alcohol and drug abuse and involvement in criminal activity, but also her current efforts and fitness demonstrate she has done little to actually achieve sobriety or to address the problems that led to both

11

of her children's dependencies.  At the disposition hearing, mother acknowledged she did nothing to address her substance abuse between her 2018 conviction for possession of a controlled substance and her enrollment in Alternatives for Better Living, just a few weeks before the disposition hearing.  In addition, prior to the hearing, mother told the department point blank that she was not interested in visitation or phone calls with minor.  Indeed, father has been minor's primary caregiver since at least 2014.

Finally, and most consequential to our inquiry, two of minor's mental health providers, her psychologist and psychiatrist, described minor's significant mental health issues, including her diagnoses of PTSD, attention-deficit/hyperactivity disorder, and disruptive mood regulation disorder.  These experts agreed minor's relationship with mother was harmful to minor's health and well-being, as mother appeared to be a significant trigger for minor's emotional breakdowns and hospitalizations.

"Subdivision (b)(13) of section 361.5 'reflect[s] a legislative determination that an attempt to facilitate reunification between a parent and child generally is not in the minor's best interests when the parent is shown to be a chronic abuser of drugs who has resisted prior treatment for drug abuse.'  [Citation.]  Experience tells us that such a parent has a high risk of reabuse [that] places the parent's interest in reunifying with her child directly at odds with the child's compelling right to a 'placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.'  [Citation.]"  (*William B., supra*, 163 Cal.App.4th at p. 1228, 2d–4th bracketed insertions added.)  Compounding these factors with minor's multiple significant mental health issues, we have no doubt the juvenile court had discretion to find that reunification with mother would not be in minor's best interests.

12

# DISPOSITION

The jurisdiction/disposition order dated October 5, 2020, is affirmed.

 

 

_____
Jackson, P. J.

WE CONCUR:

_____
Simons, J.

_____
Needham, J.

A161209/*Sonoma County Human Services Dept. v. Shawna M.*