Filed 8/14/23  T.L. v. Superior Court CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| T.L., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SANTA BARBARA COUNTY, <br><br> Respondent, <br><br> SANTA BARBARA COUNTY CHILD WELFARE SERVICES, <br><br> Real Party in Interest. | 2d Juv. No. B326173 <br> (Super. Ct. No. 22JV00363) <br> (Santa Barbara County) |

   T.L., the mother of 8-month-old Bella L., seeks extraordinary writ relief from the juvenile court's order bypassing reunification services and setting the matter for a permanency

planning hearing pursuant to Welfare and Institutions Code section 366.26.[1]  We deny the petition.

*Facts and Procedural Background*

Mother has a long history with the child dependency system going back to 2011, including for neglect, chronic drug abuse, and criminality.  She had multiple drug-related referrals, her parental rights to two of her children had been terminated in two separate cases, and she had a voluntary family maintenance case for a third child after testing positive for methamphetamine during a prenatal visit in 2018.

In November 2022, Santa Barbara County Department of Social Services (the department) secured a protective custody warrant and detained newborn baby Bella and her four-year-old sister, S.H., after Bella tested positive for amphetamine at birth. The department filed a dependency petition alleging, among other things: (1) Bella's positive test for amphetamine; (2) mother's positive test for methamphetamine during a prenatal visit in August 2022; (3) mother's admission to using methamphetamine during her pregnancy; (4) mother's "substantial" child welfare history, including the removal and subsequent adoptions of Bella's half siblings, J.L. and M.L. in 2012 and 2018, respectively; and (5) mother's criminal history.

J.L.'s case involved mother's failure to make substantial progress with her substance abuse treatment program, drug testing, visitation, and her failure to obtain suitable housing. M.L.'s case involved mother's arrest for outstanding warrants and living in her vehicle with M.L.  Mother was subsequently

---

[1] All further statutory references are to the Welfare and Institutions Code.

bypassed for services pursuant to section 361.5, subdivisions (b)(10), (b)(11), and (b)(13).

In this case, the detention report indicated that during an in-hospital interview with mother, she told a department social worker that she had "slipped" and relapsed one time after she found out she was pregnant at about four months along. The social worker told mother she likely used recently as she had tested positive for methamphetamine. Mother responded, "'ok, just those two times.'" But when the social worker asked mother about the positive test in August 2022 during a prenatal visit, mother became defensive and stated, "'ok three times!'" Mother stated that "she did not have any problems with substance use" and that "she had been clean for years." When asked if she would be open to services, mother told the social worker she was not willing to do inpatient treatment but would do outpatient treatment "'all day.'"

The department's amended jurisdiction and disposition report recommended mother be bypassed for family reunification services pursuant to section 361.5, subdivisions (b)(10), (b)(11), and (b)(13). The department cited mother's chronic, long-standing substance abuse, the prior loss of custody of J.L. and M.L., and mother's failure to comply with the court-ordered substance abuse treatment services in J.L.'s case and mother's 2015 criminal court case.

As part of her formal supervision for the criminal case, mother was referred to services at Recovery Point. However, she was terminated unsuccessfully in 2015 when she failed to attend the program. In 2016, mother was arrested and incarcerated for violation of probation. After her release from jail, mother completed approximately one year of substance abuse treatment

3

services.  Mother reported that she relapsed after completing treatment and used methamphetamine between October 2017 and early 2018.

After Bella's birth in November 2022, and following the children's detention, mother completed a 60-day inpatient treatment program through Project Premie, enrolled in a six-month outpatient program, attended group counseling, met with her sponsor weekly, and attended 12-step Narcotics Anonymous meetings daily.

At the contested jurisdiction and disposition hearing in January 2023, the department social worker and mother testified.  After hearing testimony and considering the evidence, the juvenile court found by a preponderance of the evidence that the allegations in the amended petition were true, ordered reunification services to be bypassed for mother, and set the matter for a section 366.26 hearing as to Bella.

*Discussion*

Mother contends the juvenile court erred by denying her reunification services because insufficient evidence supports the juvenile court's findings that she met the required statutory criteria pursuant to section 361.5, subdivisions (b)(10), (b)(11), and (b)(13).

We review an order denying reunification services for substantial evidence.  (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96 (*Cheryl P.*).)  Under that standard, "we inquire whether the evidence, contradicted or uncontradicted, supports the [juvenile] court's determination.  We resolve all conflicts in support of the determination, indulge in all legitimate inferences to uphold the findings and may not substitute our deductions for those of the juvenile court." (*Georgeanne G. v.*

4

*Superior Court* (2020) 53 Cal.App.5th 856, 864-865 (*Georgeanne G.*).)

Generally, when a child is removed from parental custody under the dependency laws, the juvenile court is required to provide reunification services unless one of several statutory exceptions applies. (§ 361.5, subd. (a).) For example, reunification services shall not be provided to a parent described in section 361.5, subdivisions (b)(10), (b)(11), or (b)(13), "unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (*Id.*, subd. (c)(2).) "'[O]nce it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. [Citation.]'" (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 (*Renee J.*).)

Section 361.5, subdivision (b)(10) recognizes the problem of recidivism by the parent despite reunification efforts. (*Renee J.*, *supra*, 26 Cal.4th at pp. 744-745; *Cheryl P.*, *supra*, 139 Cal.App.4th at p. 96.) This subdivision applies if the juvenile court previously ordered the termination of reunification services for any siblings or half siblings of the child, and the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . . " (§ 361.5, subd. (b)(10)(A).)

Section 361.5, subdivision (b)(11), authorizes the denial of reunification services if "the parental rights of a parent over any sibling . . . had been permanently severed" and the "parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . ." (*Id.*, subd. (b)(11)(A).)

There is no dispute the first prongs of section 361.5, subdivisions (b)(10) and (b)(11) were established, i.e., the termination of reunification services and the permanent severance of mother's parental rights over J.L. and M.L. in the two prior dependency actions. However, mother contends substantial evidence does not support the juvenile court's finding that she had not made a reasonable effort to treat the problems that led to the removal of J.L. and M.L. We disagree.

Here, in denying reunification services, the juvenile court expressly considered mother's "chronic history of drug abuse" and her "fail[ure] to reunify" with two of her other children "for the same problem." Although the juvenile court commended mother for her recent efforts, it explained that it did not believe "the legislation is written in a way where the parent can defeat the exception of reunification services by starting reunification services once the petition is filed."

Mother contends the court's reasoning was not appropriate because the statute does not require the parent to have made the effort *before* the filing of the section 300 petition. According to mother, the juvenile court "failed to deem [her] prior and subsequent efforts as reasonable."

But not every "effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the *duration*, *extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long

6

term, may be considered to the extent it bears on the *reasonableness* of the effort made." (*In re R.T.* (2012) 202 Cal.App.4th 908, 914.)

Here, the juvenile court found, by clear and convincing evidence, that mother had not made reasonable efforts to treat the problems that led to removal of the children's sibling or half sibling. In making its ruling, the juvenile court opined that it did not believe there was "much evidence" that mother had done "much" to treat the problem since the last time she was in front of the juvenile court. It also did not believe mother was "being candid about her drug use," and there was "clear evidence" that mother had "an ongoing problem with drug use."

The record supports the juvenile court's findings. By mother's own admission, she had been "dipping and dabbing" with methamphetamine since 2002. Her substance abuse issues led to the loss of her parental rights to J.L. in 2012. Despite this, mother continued to use methamphetamine, failed to comply with her probation requirements in her drug-related 2015 criminal case, and ultimately lost custody of M.L. in 2018. Although mother was able to complete one year of residential treatment at Project Premie in 2017 and voluntarily participated in another drug program through Project Premie in 2018, the record shows mother used while pregnant with Bella on at least one occasion. Even when confronted with this evidence, mother attempted to minimize her drug use, and denied that she had a substance abuse problem.

The purpose of the reasonable effort prong of section 361.5, subdivisions (b)(10) and (b)(11), is not to create further delay for a child by allowing a parent, who up to that point has not reasonably addressed his or her problems, another opportunity to

do so.  (*In re Harmony B.* (2005) 125 Cal.App.4th 831, 843.) Based on this record, the juvenile court did not err in denying mother reunification services pursuant to section 361.5, subdivisions (b)(10) and (b)(11).

The juvenile court also denied mother reunification services pursuant to section 361.5, subdivision (b)(13).  That section provides in part that the juvenile court may bypass services to a parent where it finds by clear and convincing evidence that the parent "has a history of extensive, abusive, and chronic use of drugs or alcohol," and "has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible."  (§ 361.5, subd. (b)(13).)

Here, mother concedes that she satisfies the first condition, i.e., that she has a history of extensive, abusive, and chronic abuse of drugs.  As to the second condition, mother acknowledges she was ordered into drug treatment in 2011 when she was granted family reunification services as to J.L. and failed that. She also acknowledges the juvenile court was "not incorrect" in considering her failure to complete the criminal court-ordered probation program in 2015, which falls within the statutory criteria of section 361.5, subdivision (b)(13).  (See *D.B. v. Superior Court* (2009) 171 Cal.App.4th 197, 204.)

Nevertheless, mother asks us to "deem" her "follow-up compliance" with the probation requirement of substance abuse treatment services in 2016 as "an act that supersedes her failure to comply in 2015."  We decline mother's request to do so.  (See *Georgeanne G.*, *supra,* 53 Cal.App.5th at p. 865.)

8

Because we conclude substantial evidence supports the juvenile court's order bypassing services to mother on this basis, we need not address the statute's alternative basis for bypassing services, i.e., that the parent "resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition . . . ." (§ 361.5, subd. (b)(13).)

*Disposition*

The petition is denied.

<u>NOT TO BE PUBLISHED</u>.


YEGAN, acting P. J.


We concur:


BALTODANO, J.


CODY, J.

Gustavo E. Lavayen, Judge
Superior Court County of Santa Barbara

_____

Jesse Frederic Rodriguez and Giselle Marie Achecar, under appointment by the Court of Appeal, for petitioner.

No appearance for Respondent.

Rachel Van Mullem, County Counsel, Adam R. Crawford, Snr. Deputy County Counsel, for Real Party in Interest.